DANIEL K. SPRADLIN – State Bar No. 82950
M. LOIS BOBAK - State Bar No. 127540
WOODRUFF, SPRADLIN & SMART, APC
555 Anton Boulevard, Suite 1200
Costa Mesa, California 92626-7670
Telephone: (714) 558-7000
Facsimile: (714) 835-7787
dspradlin@wss-law.com
lbobak@wss-law.com

Attorneys for Respondents and Defendants CITY OF NEWPORT BEACH and CITY COUNCIL OF CITY OF NEWPORT BEACH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONCERNED CITIZENS OF NEWPORT BEACH,<br><br>                    Petitioner and Plaintiff,<br><br>v.<br><br>CITY OF NEWPORT BEACH; CITY COUNCIL OF THE CITY OF NEWPORT BEACH; MORNINGSIDE RECOVERY LLC; SOBER LIVING BY THE SEA, INC.; CRC HEALTH GROUP, INC.; PACIFIC SHORES RECOVERY; OCEAN RECOVERY, LLC; BALBOA HORIZONS RECOVERY SERVICES, LP; NEWPORT COAST RECOVERY, LP; THE KRAMER CENTER AT NEWPORT BEACH; THE SHORES TREATMENT AND RECOVERY; MIRAMAR HEALTH, INC.; NARCANON SOUTHERN CALIFORNIA; and, DOES 1 to 300, inclusive,<br><br>                    Respondents and Defendants. | CASE NO. SACV 08 - 0192 AG (RNBx)<br><br>**NOTICE OF REMOVAL OF ACTION; UNDER 28 U.S.C. §1441(b) (FEDERAL QUESTION)** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants City of Newport Beach and City Council of the City of Newport Beach hereby remove to this Court the state court action described below pursuant to 28 U.S.C. §1441(b), 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

1

564985.1

1.    On January 22, 2008 an action was commenced in the Superior Court of the State of California in and for the County of Orange, entitled Concerned Citizens of Newport Beach, Petitioner and Plaintiff v. City of Newport Beach, et al., Respondents and Defendants, as case number 30-2008 00101684.  An amended petition/complaint was filed on February 8, 2008.  Copies of the original summons and petition/original complaint are attached hereto as Exhibit A.  Copies of the amended petition/complaint and the summons issued therewith are attached hereto as Exhibit B.

2.    Defendants City of Newport Beach and City Council of Newport Beach were not served with the original complaint, and have not been served with the first amended petition/complaint.  Plaintiffs did, however, provide the City with a courtesy copy of the original complaint.  The City Defendants learned of the filing of the amended complaint when checking the Superior Court docket on February 19, 2008.

3.    This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343, and is one which may be removed to this Court by Defendants pursuant to the provisions of 28 U.S.C. §1441(b) in that it arises under the federal Civil Rights Act, 42 U.S.C. §1983.  The Plaintiffs allege a violation of their federal due process rights under the Fourteenth Amendment of the United States Constitution.  The state court claims are all transactionally related to the federal claims and therefore subject to jurisdiction under 28 U.S.C. §1367.

4.    The City is informed and believes that no other Defendants named in the action have been served.

DATED:  February 20, 2008            WOODRUFF, SPRADLIN & SMART, APC


By: _Daniel K. Spradlin_

DANIEL K. SPRADLIN
M. LOIS BOBAK
Attorneys for Respondents and Defendants
CITY OF NEWPORT BEACH and CITY
COUNCIL OF CITY OF NEWPORT
BEACH

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

564985.1

2

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
CITY OF NEWPORT BEACH; CITY COUNCIL OF THE CITY OF NEWPORT BEACH; MORNINGSIDE RECOVERY, LLC; SOBER LIVING BY THE SEA, INC.; CRC HEALTH GROUP, INC. (defendants cont'd on attached sheet)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CONCERNED CITIZENS OF NEWPORT BEACH

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JAN 2 2 2008

ALAN SLATER, Clerk of the Court

BY B. LEA, DEPUTY

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

30-2008

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso):* **00101684** |

Superior Court of California
County of Orange
700 Civic Center Drive West
Santa Ana, CA 92701
CENTRAL JUSTICE CENTER

JUDGE DEREK W. HUNT
DEPT. C24

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael L. Tidus. SBN 126425         Tel: 949-752-8585          Fax: 949-752-0597
JACKSON, DeMARCO, TIDUS, PETERSEN & PECKENPAUGH
2030 Main Street, Suite 1200
Irvine, CA 92614

DATE: *(Fecha)* JAN 2 2 2008    ALAN SLATER    Clerk, by _____, Deputy
*(Secretario)*    BRITTNEY LEA    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
  under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
      ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
      ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

 

EXHIBIT    A

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Concern Citizens of Newport Beach v. City of Newport Beach | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Pacific Shores' Recovery; Ocean Recovery, LLC; Balboa Horizons Recovery Services, LP; Newport Coast Recovery, LP; The Kramer Center at Newport Beach; The Shores Treatment and Recovery; Miramar Health, Inc.; Narcanon Southern California; and Does 1 to 300 inclusive

Page _____ of _____

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

I hereby certify the foregoing instrument consisting of __2__ page(s)
is a true and correct copy of the original on file in this court.

FEB 1 9 2008

ATTEST (DATE)_____

ALAN SLATER, EXECUTIVE OFFICER AND CLERK OF THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY _____ , DEPUTY

DENISSE SANDOVAL

1 MICHAEL L. TIDUS, State Bar No. 126425
mtidus@jdtplaw.com
2 ALENE M. TABER, State Bar No. 218554
ataber@jdtplaw.com
3 KATHRYN M. CASEY, State Bar No. 227844
kcasey@jdtplaw.com
4 JACKSON, DeMARCO, TIDUS, PETERSEN
& PECKENPAUGH
5 2030 Main Street, Suite 1200
Irvine, California 92614
6 Phone (949) 752-8585
Fax (949) 752-0597
7

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**JAN 22 2008**

ALAN SLATER, Clerk of the Court

BY:_____B. LEA_____DEPUTY

8 Attorneys for Petitioner and Plaintiff
CONCERNED CITIZENS OF NEWPORT BEACH

9

10 SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE

11 **30-2008**

12 **00101684**

13 CONCERNED CITIZENS OF NEWPORT
BEACH,

CASE NO.

14     Petitioner and Plaintiff,

**JUDGE DEREK W. HUNT**

15 vs.

**VERIFIED PETITION FOR WRIT OF
MANDATE [CODE OF CIVIL
PROCEDURE SECTION 1085] AND
COMPLAINT BY PETITIONER AND
PLAINTIFF CONCERNED CITIZENS
OF NEWPORT BEACH, FOR:**

16 CITY OF NEWPORT BEACH; CITY
COUNCIL OF THE CITY OF NEWPORT
17 BEACH; MORNINGSIDE RECOVERY,
LLC; SOBER LIVING BY THE SEA, INC.;
18 CRC HEALTH GROUP, INC.; PACIFIC
SHORES RECOVERY; OCEAN
19 RECOVERY, LLC; BALBOA HORIZONS
RECOVERY SERVICES, LP; NEWPORT
20 COAST RECOVERY, LP; THE KRAMER
CENTER AT NEWPORT BEACH; THE
21 SHORES TREATMENT AND RECOVERY;
MIRAMAR HEALTH, INC.; NARCANON
22 SOUTHERN CALIFORNIA; and, DOES 1 to
300, inclusive,
23

**(1) DAMAGES FOR CIVIL
RIGHTS VIOLATIONS;
(2) NEGLIGENCE FOR FAILURE TO
DISCHARGE MANDATORY
DUTIES;
(2) VIOLATION OF BUS. & PROF.
CODE § 17200;
(3) PUBLIC NUISANCE; AND,
(4) DECLARATORY RELIEF**

    Respondents and Defendants.

24

25

26

27

28

-1-

Plaintiff and Petitioner Concerned Citizens of Newport Beach, alleges as follows:

## THE PARTIES

1.     Petitioner and Plaintiff Concerned Citizens of Newport Beach ("Citizens") is a nonprofit mutual benefit corporation organized under the Nonprofit Mutual Benefit Corporation Law.  Citizens' purpose is to enhance and provide a safe and healthy living environment for the citizens and residents of the City of Newport Beach.  Citizens' members reside in the Balboa Peninsula, Lido Isle, Lido Village, West Newport, Corona del Mar, Newport Heights, and Santa Ana Heights areas ("Impacted Areas") of the City of Newport Beach.  Citizens' members reside next to or near residential care facilities owned and/or operated by the drug and alcohol rehabilitation Defendants (as alleged in paragraphs 4 to 14 herein), and are negatively impacted by their operations.

2.     Respondent and Defendant City of Newport Beach ("City"), is a charter city, located in the County of Orange ("County"), State of California ("State").

3.     Respondent and Defendant City Councilmembers ("City Council"), are individuals beings sued in their official capacities as the City Mayor and City Councilmembers.

4.     Defendant Morningside Recovery, LLC, owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

5.     Defendant Sober Living by the Sea, Inc., owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

6.     Defendant CRC Health Group, Inc., is based in Cupertino, California, and is the owner of Defendant Sober Living By the Sea, Inc.

7.     Defendant Pacific Shores Recovery owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

8.     Defendant Ocean Recovery, LLC, owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

9.     Defendant Balboa Horizons Recovery Services, LP, owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

-2-

10.    Defendant Newport Coast Recovery, LP, owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

11.    Defendant The Kramer Center at Newport Beach owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

12.    Defendant The Shores Treatment and Recovery owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

13.    Defendant Miramar Health, Inc., owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

14.    Defendant Narcanon Southern California owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

15.    All Defendants identified in paragraphs 4 to 14 shall be collectively referred to as the Defendant "Facility Operators."

16.    Citizens is informed and believes that a number of persons and entities own property upon which the Defendant Facility Operators operate drug and alcohol rehabilitation extended care treatment program facilities located in the City, and as such, are identified as "Property Owners." Citizens will amend its Complaint and Petition to name the Property Owners as Doe Defendants as that information is discovered.

17.    The true names and capacities for Respondents and Defendants sued herein as Does 1 through 300, inclusive, are unknown at this time to Citizens, who therefore sues each such Respondents and Defendants by such fictitious names. Citizens is informed and believes, and thereon alleges, that there may be additional Facility Operators and Property Owners. Citizens will amend this Petition/Complaint to allege the true names and capacities when they have been ascertained, including but not limited to the Property Owners and any additional Facility Operators.

## GENERAL ALLEGATIONS

### State Regulation of Residential Care Facilities.

18.    State law requires Alcoholism or Drug Abuse Recovery or Treatment Facilities (Health & Safety Code §§ 11834.01 *et seq.*) to obtain a State license from the State Department

-3-

1      of Alcohol and Drug Programs ("ADP") to operate.

2          19.    The State defines an "alcoholism or drug abuse recovery or treatment facility" as

3      "any premises, place, or building that provides 24-hour residential nonmedical services to

4      adults who are recovering from problems related to alcohol, drug … misuse or abuse, and who

5      need … recovery treatment or detoxification services." (Health & Safety Code, § 11834.02,

6      subd. (a).)

7          20.    Under the State's implementing regulations, an "alcoholism or drug abuse

8      recovery or treatment facility" may mean "any facility, building, *or group of buildings*." (9 Cal.

9      Code Regs., § 10501, subd. (a)(27) [emphasis added].)

10         21.    To qualify as "alcoholism or drug abuse recovery or treatment facility", the State

11     requires at least one of the following non-medical services to be provided: (1) recovery

12     services, (2) treatment services, or (3) detoxification services. (Health & Safety Code, §

13     11834.26.)

14         22.    State law provides that no "alcoholism or drug abuse recovery or treatment

15     facility" may be operated, established, or maintained without first obtaining a valid license from

16     the ADP (Health & Safety Code, § 11834.30.)  A single ADP-issued license may be obtained

17     for "a facility wherein separate buildings or portions of a residential facility are integral

18     components of a single alcoholism or drug abuse recovery or treatment facility and all of the

19     components of the facility are managed by the same licensee."  (Health & Safety Code, §

20     11834.09.)

21         23.    State law also provides that an "alcoholism or drug abuse recovery or treatment

22     facility" serving 6 or fewer persons is considered "a residential use of property."  The residents

23     and operators of such a facility are considered a family for the purposes of any law or zoning

24     ordinance relating to the residential use of property.  (Health & Safety Code, § 11834.23.)

25         24.    The City's current Municipal Code includes two residential use classifications

26     for Residential Care Facilities:

27             a.    "Residential Care, General. Shared living quarters (without separate kitchen or

28                  bathroom facilities for each room or unit) for seven or more persons with physical

-4-

CONCERNED CITIZENS OF NEWPORT BEACH'S VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT

1   or mental impairments that substantially limit one or more of such person's major

2   life activities when such persons are not living together as a single housekeeping

3   unit. This classification includes, but is not limited to, group homes, sober living

4   environments, recovery facilities and establishments providing non-medical care

5   for persons in need of personal services, supervision, protection or assistance

6   essential for sustaining the activities of daily living." (Mun. Code, § 20.05.030,

7   subd. (D).)

8       b.   "Residential Care, Limited. Shared living quarters (without separate kitchen and

9   bathroom facilities for each room or unit) for six or fewer persons with physical

10  or mental impairments that substantially limit one or more of such person's major

11  life activities. This classification also includes, but is not limited to, group homes,

12  sober living environments, recovery facilities, and establishments providing non-

13  medical care for persons in need of personal services, supervision, protection, or

14  assistance essential for sustaining the activities of daily living." (Mun. Code, §

15  20.05.030, subd. (E).)

16      25.    The City's current Municipal Code defines "Campus" as "three or more

17  buildings in a residential zone within a three hundred (300) foot radius of one another that are

18  used together for a common purpose where one or more of the buildings provides a service for

19  the occupants of all the buildings such as when one building serves as a kitchen/food service

20  area for the occupants of the other buildings." (Mun. Code, § 20.03.030.)

21      26.    The City's current Municipal Code allows Residential Care, Limited, as a

22  permitted use in all residential zones.  Residential Care, General, uses are not permitted in R-A

23  and R-1 zones, but are expressly allowed through a Federal Exemption Permit in R-1.5, R-2,

24  and MFR zones.  (Mun. Code, § 20.10.020.)

25      27.    The City's current Municipal Code also provides: "No building permit or

26  certificate of occupancy shall be issued in any case where a use permit, variance, or Federal

27  Exception Permit is required by the terms of this code unless and until such use permit,

28  variance or Federal Exception Permit has been granted by the Planning Director or the Planning

-5-

1   Commission or by the affirmative vote of the City Council on appeal or review and then only in

2   accordance with the terms and conditions of the use permit, variance or Federal Exception

3   Permit granted." (Mun. Code, § 20.91.015.)

4       28.    The City's current Municipal Code also provides: "An application for a use

5   permit, variance, or Federal Exception Permit shall be filed in a manner consistent with the

6   requirements contained in Chapter 20.90, Application Filing and Fees." (Mun. Code, §

7   20.91.020.)

8       29.    The City's current Municipal Code further provides: "The Planning

9   Commission or the Planning Director, as the case may be, shall approve or conditionally

10  approve an application for a use permit, variance, or Federal Exception Permit if, on the basis

11  of the application, plans, materials, and testimony submitted, the Planning Commission or the

12  Planning Director finds: . . .

13      C. For Federal Exception Permits [A 'Federal Exception Permit' is the name of the permit

14  and application process necessary to obtain a "reasonable accommodation" as that term is used

15  in the Federal Fair Housing Act Amendments (FHAA) and the case law implementing the

16  FHAA. The application for a Federal Exception Permit shall be approved unless there is

17  substantial evidence in the administrative record that establishes that one or more of the

18  findings for approval cannot be made. Federal Exemption Permits are subject to the

19  enforcement provision contained in Chapter 20.96.]

20      1. The Federal Exception Permit sought is handicapped-related.

21      2. The living group is not residing in the dwelling or dwellings as a single housekeeping

22  unit.

23      3. The Federal Exception Permit, if approved, would not require a fundamental alteration in

24  the nature of a municipal program nor impose an undue financial or administrative burden on

25  the City. To the extent authorized by law, the factors the Planning Commission or the City

26  Council on review or appeal may consider in deciding whether to grant a Federal Exception

27  Permit include, but are not necessarily limited to:

28      a. Whether the nature and/or extent of vehicular traffic, such as the frequency or duration

CONCERNED CITIZENS OF NEWPORT BEACH'S VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT

1   of trips by commercial vehicles, would be altered to a such an extent that it would be contrary

2   to, or violate, any relevant provision of the Newport Beach Municipal Code if the Federal

3   Exception Permit was approved; or

4          b. Whether development or use standards established in the Newport Beach Municipal

5   Code and that are applicable to other residential uses in the neighborhood would be violated; or

6          c. Whether a campus would be established in a residential zone if the Federal Exception

7   Permit were granted." (Mun. Code, § 20.91.035.)

8          30.     The City should be knowledgeable about the State law requirements relating to

9   alcohol or drug abuse recovery or treatment centers.  The City's current Municipal Code

10  provisions regulating Residential Care Facilities are intended to implement State law.  The City

11  is required to enforce these laws.  (*See, e.g., Sego v. Santa Monica Rent Control Board* (1997)

12  57 Cal.App.4th 250 [upholding private landlords' petition for writ of mandate to compel city

13  rent control board to comply with state law obligations].)

14         31.     The City is further aware that several Defendant Facility Operators have devised

15  schemes to circumvent these laws.  The City has the authority and responsibility under its

16  Charter to ensure that persons and entities operating within its jurisdictional boundaries comply

17  with all applicable laws.  (Charter, § 200.)  However, the City has willfully failed to take

18  appropriate and required actions to ensure that the Defendant Facility Operators stop

19  circumventing and violating these laws.

20         32.     The Defendant Facility Operators have circumvented, and continue to violate,

21  the State ADP-licensing requirements (and the Municipal Code Federal Exemption Permit

22  requirement) by separating non-medical recovery, treatment, and/or detoxification services

23  from the residential living quarters.  The supervised services and living quarters are integral

24  components of the same facility and operation: (1) the persons residing in the residential living

25  quarters are required to participate in one or more of these services; (2) the facility operator

26  arranges for transportation between living quarters location and services location; and, (3)

27  elements of supervision, staffing, and control at both the services and living quarters locations

28  are the same.

-7-

33.     The Defendant Facility Operators have also circumvented, and continue to violate, the State ADP-licensing requirements (and the Municipal Code Federal Exemption Permit requirement) by artificially creating a series of sub-facilities that each provide supervised living quarters for 6 or fewer persons. The sub-facilities are integral components of the same facility and operation having greater than 6 persons. For example, the sub-facilities are: (1) located in the same facility, building, or group of buildings on the same or nearby property; (2) persons residing in these sub-facilities attend the same non-medical recovery, treatment, and/or detoxification services; and, (3) elements of supervision, staffing, and control at the sub-facility locations are the same.

34.     By circumventing and violating State laws as alleged herein, Defendant Facility Operators are also violating the zoning restrictions in City Municipal Code section 20.10.020, and the Federal Exemption Permit Requirement set forth in City Municipal Code sections 20.91.015, 20.91.020, and 20.91.035.

**City Over-Concentration of Residential Care Facilities and Statistics.**

35.     Numerous City residents that reside in the Impacted Areas have been, and continue to be, negatively affected by the over-concentration of residential treatment facilities, sober living, homes, boarding houses, and care facilities (collectively, "Residential Care Facilities") in the Impacted Areas.

36.     According to the City, the City has a disproportionate number of State licensed and unlicensed Residential Care Facilities compared to its population. For example:

a.   The City has the highest number of State licensed and unlicensed Residential Care Facilities in Orange County – 2.63 licensed alcohol and drug treatment beds per 1,000 residents (the average is 0.52).

b.   The City has over 14 percent of all licensed Residential Care Facility beds in the County, when the City has less than 2.8 percent of the County's population.

c.   Approximately 29 percent of all new State licenses issued by ADP for licensed Residential Care Facilities are in the City.

d.   Approximately 94 percent of the new licenses are for Residential Care Facilities

-8-

1    in the Impacted Areas.  Over 100 licensed and unlicensed Residential Care

2    Facilities are located in the Impacted Areas.

3        e.    The City has deliberately allowed the rapid growth in the number of Residential

4            Care Facilities to go unchecked in the absence of appropriate regulations to

5            minimize impacts to the existing community.  In 2003, there were 5 State licensed

6            Residential Care Facilities in the City.  In 2007, there were 24 State licensed

7            Residential Care Facilities, with 4 additional State license decisions pending.

8        37.    The City has engaged in non-regulation of Residential Care Facilities,

9    improperly asserting that its ability to regulate these uses is completely restricted by federal and

10   State laws.

11       38.    The City's Municipal Code currently allows license and unlicensed Residential

12   Care Facilities for 6 or fewer persons in all residential zones without a use permit.  (City Mun.

13   Code, § 20.10.020.)

14       39.    The City's Municipal Code currently requires a special Federal Exception Permit

15   for Residential Care Facilities of 7 or more persons.  (City Mun. Code, § 20.10.020.)  However,

16   the Defendant Facility Operators have never applied for nor received the required Federal

17   Exception Permit.  The City has never issued, and has failed to require, the existing Residential

18   Care Facilities for 7 or more persons to obtain a Federal Exemption Permit.  Therefore, these

19   Residential Care Facilities were established illegally, and continue to operate in violation of the

20   City's Municipal Code.  Citizens has repeatedly requested and demanded that the City enforce

21   its laws.  The City knows that these Residential Care Facilities are operating in violation of the

22   Municipal Code, but has refused to implement or otherwise enforce the law.

23       40.    The City has willfully refused to enforce any applicable Municipal Code

24   requirements as it relates to Residential Care Facilities.  For example, the City willfully failed

25   to enforce its use permit, and subsequently enacted Federal Exception Permit, requirements for

26   Residential Care Facilities, even though it was legally required to do so under its own

27   regulations. The City also provided certificates of occupancy to a number of Facility Operators

28   to operate Residential Care Facilities without the proper fire clearances.

-9-

**Adverse Impacts Attributed to City's Failure to Regulate Group Residential Facilities.**

41.     The City's failure to implement and enforce the existing Municipal Code requirements regulating Residential Care Facilities has caused adverse impacts to the Citizens. Residential Care Facilities have, and continue to be, established and operated in violation of the City Municipal Code and State law.  The City is aware of this fact and has failed to take corrective action to protect its citizens.

42.     The continued establishment, expansion and operation of Residential Care Facilities in the City, specifically the Impacted Areas, threatens the public health, safety, and welfare of the Citizens.  Further, the over-concentration allowed by the City of Residential Care Facilities has, and is continuing to, transform residential neighborhoods in the Impacted Areas into institutionalized zones in violation of zoning laws.

43.     Citizens' members experience significant adverse impacts as a result of the Facility Operators' activities and the City's failure to effectively regulate Residential Care Facilities in the Impacted Areas.  For example:

    a.  Over-concentration.  Over-concentration of Residential Care Facilities in the Impacted Areas in the City causes impacts to the point that the character of the neighborhood has been transformed into an institutionalized zone.  It is currently estimated that over 100 licensed and un-licensed Residential Care Facilities exist in the Impacted Areas, including alcoholism or drug abuse recovery or treatment facilities and sober living facilities.  In some parts of the Impacted Areas the total number of beds in Residential Care Facilities and "sober living homes" is estimated to exceed 20 percent of the total population of the area.

    b.  Refusal to Maintain Adequate Records.  Despite the fact that Citizens has requested that the City monitor and manage this use, the City has not maintained records on the number, size, and location of Residential Care Facilities within its jurisdiction.  By refusing to maintain records, the City is unable to ensure that all Residential Care Facilities are in compliance with all regulatory requirements, including those in the City's Municipal Code and State laws.  The City's

-10-

1   treatment of these uses is not consistent with its policy and practice of monitoring

2   other uses in the City.

3   c.   Incompatibility with Established Neighborhood Communities.  The over-

4   concentration of Residential Care Facilities in the Impacted Areas conflicts with

5   the purpose of traditional, established neighborhoods, including permanence,

6   stability, and linkages to the community described in the General Plan and City

7   Zoning Ordinance.  (See, e.g., Mun. Code, § 20.10.010.)  The Impacted Area is

8   characterized by small lots with narrow setbacks, with frequently less than 5 feet

9   between buildings.  The close proximity between buildings exacerbates the

10   adverse impacts.  An increase in density caused by institutionalization creates a

11   significant impact to the existing residential community.  Institutionalization also

12   increases noise, smoke, parking, littering, and loitering, and especially burdens

13   these established residential communities.

14   d.   Concentration of Population with No Affiliation to Community.  Residential Care

15   Facilities in the City tend to house occupants from out of the area that have no ties

16   to the community, thus eliminating the "sense of community" in the Impacted

17   Areas.

18   e.   Type of Housing Does Not Necessarily Accommodate the Use.  Residential Care

19   Facilities in the Impacted Areas promote dormitory style living that can not be

20   accommodated by the design of the existing housing stock in the Impacted Areas.

21   f.   Increased Traffic.   Over-concentration and institutionalization in the Impacted

22   Areas creates an increase in traffic from the higher number of occupants of each

23   Residential Care Facility and a higher demand for services generated by those

24   occupants, and from staff and caretakers.

25   g.   Limited Parking.  With increased density and traffic, Residential Care Facilities in

26   the Impacted Areas strain already limited off-street and on-street parking

27   resources.  Parking is particularly overburdened with weekend visitors, especially

28   in the older coastal communities, defined in the Impacted Area.

h.  Smoking. Well-documented public health, safety and welfare issues are associated with second-hand smoke.  Citizens' members have been subjected to increased and continuous exposure to second-hand smoke, and litter caused by ash and cigarette butts, as a result of the over-concentration of Residential Care Facilities in the Impacted Areas.  The impact is especially severe in the Impact Area where the buildings are located in close proximity to one another.

i.  Loitering.  The over-concentration of Residential Care Facilities in the Impacted Areas results in an increase in the amount of noise, loitering, and littering outside residential homes and in public right of ways (e.g., sidewalks, beach boardwalks, etc.) in the Impacted Areas.  Activities are moved outdoors because traditional residential units are not designed for dormitory style living, and due to Defendant Facility Operators' method of operation.

j.  Safety.  The over-concentration of Residential Care Facilities in the Impacted Areas has increased the presence of parolees, probationers, and persons serving alternative sentencing that reside in close proximity to schools and child care facilities in the Impacted Areas, posing a safety concern.  Citizens' members have observed and experienced criminal activity caused by Residential Care Facility residents, including, but not limited to increased vandalism, theft, drug-related incidents, and drug dealing.

k.  Deliveries. There is an increase in the number of commercial or other types of delivery trucks and vehicles in the Impacted Areas as a result of the over-concentration of Residential Care Facilities.  There is also an increase in the number of trucks and vans transporting occupants of Residential Care Facilities to other Residential Care Facilities.

### History of City's Regulation of Group Residential Facilities.

### Pre-2004 Regulations.

44.    Prior to 2004, the City's Municipal Code section 20.05.030 (Residential Use Classifications) included only a "Residential Care, Limited" use classification for Residential

-12-

1    Care Facilities.  The "Residential Care, Limited" use was defined as "twenty-four hour non-

2    medical care for six or fewer persons in need of personal services, supervision, protection, or

3    assistance essential for sustaining the activities of daily living.  This classification includes

4    those services and facilities licensed by the State of California."  The City only permitted as a

5    use ADP-licensed Residential Care Facilities with 6 or fewer persons in the residential zones.

6           45.    Also, prior to 2004, the City's Municipal Code section 20.05.040 (Public and

7    Semi-Public Use Classifications), subdivision (R), included a "Residential Care, General" use

8    classification for Residential Care Facilities.  The "Residential Care, General" use was defined

9    as "twenty-four hour non-medical care for seven or fewer persons, including wards of the

10   juvenile court, in need of personal services, supervision, protection, or assistance essential for

11   sustaining the activities of daily living.  This classification includes those services and facilities

12   licensed by the State of California."  The City only allowed ADP-licensed Residential Care

13   Facilities with 7 or more persons to exist in residential zones with a use permit.

14          46.    The City willfully failed to implement the use permit requirement for ADP-

15   licensed Residential Care Facilities with 7 or more persons, despite numerous requests and

16   repeated concerns posed by citizens.  As a result, Facility Operators were able to illegally

17   establish large un-permitted Residential Care Facilities in the City, as well as numerous un-

18   smaller un-permitted Residential Care Facilities that have been integrated with the larger

19   Residential Care Facilities.

20                        <u>**2003-2006 Amendments to Regulations.**</u>

21          47.    The Citizens are informed and believe, and on that basis allege, that on or about

22   June 2003, then City Attorney, Mr. Robert Burnham with his wife, Kathleen Burnham, formed,

23   funded and began operating a drug and alcohol rehabilitation service business known as the

24   Drug Court Foundation of Orange County believed to be operating significantly in the City of

25   Newport Beach.  It is further believed that the City Attorney conducted various activities in

26   support of the Drug Court Foundation from the City Hall offices during City business hours

27   between 2003 and 2005.

28          48.    During the same time period that the then City Attorney was developing this

1    drug and alcohol rehabilitation service, the City Attorney was also charged with evaluating and

2    responding to concerns community members had expressed to the City regarding impacts of

3    Residential Care Facilities.  The then City Attorney also provided guidance to the City Council

4    about amendment to the Zoning Ordinance; drafted the proposed amendments to the Zoning

5    Ordinance; and, used his position as City Attorney to convince the City and City Council to

6    adopt the Ordinance in the form he proposed.

7         49.    The then City Attorney's involvement with the Drug Court Foundation was not

8    publicly disclosed and the income he and his wife earned was not reported in any Statements of

9    Economic Interest or Form 700, that he was required to complete and maintain pursuant to the

10   requirements of the California Political Reform Act.  Additionally, the City Attorney took

11   active measures to direct City staff not to enforce the Municipal Code concerning these uses,

12   and to intimidate staff members, as well as members of the community.

13        50.    Thus, in 2004, despite both substantial evidence of adverse impacts and

14   Citizens' public protest, the City knowingly changed its local ordinances to eliminate all

15   effective regulation of Residential Care Facilities.  Under the direction of the then City

16   Attorney and Mayor, under the guise of "non-discrimination," the City took affirmative and

17   deliberate action that enabled the rampant, uncontrolled expansion of Residential Care Facilities

18   in the Impacted Areas.

19        51.    On or about September 28, 2004, the City Council adopted Ordinance No. 2004-

20   16 on Group Living Uses.

21        52.    The City Planning Commission thereafter considered Code Amendment No.

22   2004-005 on Group Homes in Residential Zones (PA2004-102).

23        53.    On or about November 28, 2006, the City Council adopted Ordinance No. 2006-

24   25 on group residential facilities (Code Amendment No. 2006-005).

25        54.    The Municipal Code, as revised by the 2004 Ordinance, was crafted to

26   specifically enable the expansion of the Residential Care Facilities and uses in the Impacted

27   Areas.  For example:

28        a.    Legal requirements for a use permit (CUP) were abolished;

-14-

b.   Licensed and unlicensed Residential Care Facility uses were permitted in residential zones R1.5 and R2;

c.   Definitions of "Residential Care-Limited" and "Residential Care, General" were revised to allow Facility Operators to commingle licensed and unlicensed uses, and to improperly characterize their operations as "6 or under" subject to certain rights to which they were not legally entitled; and,

d.   The City failed to incorporate the State's definition of "facility" into ordinance definitions and allowed Facility Operators to operate without a business license in a manner inconsistent with the City's policy on business licenses for other businesses (including requiring business licenses for home based businesses).

55.    City staff was also directed not to enforce the City's building or health and safety codes on Residential Care Facility uses.  Thus, the City refused to manage Residential Care Facilities in the same manner in which it manages other businesses, including those conducted in residential zones.

56.    By creating an environment of no regulation, the City deliberately created explicit conditions driving the rampant expansion of existing, and the entrance of new Facility Operators and Residential Care Facilities.  The Defendant Facility Operators intentionally design their business model to exploit the City's "6 and under" loophole, when the Facility Operators are actually operating the Residential Care Facilities as an integrated whole facility of more than 6 persons.

57.    The City's intentional removal of all regulation of Residential Care Facilities, combined with the well known unique characteristics of the Impacted Areas, has resulted in a serious over-concentration of Residential Care Facilities and associated negative impacts previously alleged herein.

58.    The City has formally and publicly acknowledged that the Impacted Areas have been transformed into institutionalized zones in staff reports and documents submitted to the State.  The intensity has caused well documented adverse impacts to Citizens and the Impacted Areas.  These impacts include: increased noise, subjecting Citizens to continual secondhand

-15-

1    cigarette smoke, a known carcinogen; generation of significantly more trash discarded in the

2    Impacted Areas, including discarded hypodermic needles, medical waste, and cigarette butts;

3    increased unmet parking demand; an increase in nuisance behavior; and, overburdening of the

4    existing infrastructure.

5        59.    The City willfully failed to enforce its use permit requirements, and

6    subsequently enacted Federal Exception Permit requirements, even though it was legally

7    required to do so under its own regulations.  As a result, a number of Facility Operators

8    established Residential Care Facilities within the City's Impacted Areas without ever having

9    obtained use review and approval as required by the City's Municipal Code.

10        60.    In addition, the City provided certificates of occupancy to a number of Facility

11    Operators to operate Residential Care Facilities without the proper fire clearances.  The City

12    was also grossly negligent, as it failed to establish a clear protocol to handle Citizens'

13    complaints.

14                    **2007 Proposed Ordinance.**

15        61.    Citizens threatened the City and demanded that the City take appropriate action

16    to rectify the over-concentration problem it created in 2004.

17        62.    On or about February 13, 2007, the City initiated Residential Care Facility Code

18    Amendment No. 2007-10.

19        63.    On or about March 2007, the City sponsored a conference inviting jurisdictions

20    throughout the State.  The City was shown how other jurisdictions effectively and legally

21    regulate Residential Care Facilities uses.

22        64.    On or about March 12, 2007, Citizens sent a formal demand to the City and City

23    Council demanding a moratorium on the establishment and operation of new Residential Care

24    Facilities in the City.

25        65.    On or about April 24, 2007, the City Council adopted Ordinance No. 2007-8, an

26    interim urgency ordinance establishing a temporary 45 day moratorium ("Temporary

27    Moratorium") on the establishment and operation of new group residential uses that are

28    transitory in nature such as parolee-probationer homes, safe houses, unlicensed Residential

-16-

1  Care Facilities and Residential Care Facilities-General, in all residential zoning districts of the

2  City.  The Temporary Moratorium expressly prohibited the establishment and operation, the

3  issuance of use permits, variances, other permits, business licenses, federal exception permits or

4  other applicable entitlements for the establishment or operation of new unlicensed Residential

5  Care Facilities and Residential Care Facilities-General.

6      66.    Citizens continued to demand that the City and City Council take affirmative

7  steps through a developing a revised ordinance and enforcement of its existing Municipal Code

8  to correct the health and safety problems caused by the over-concentration of Residential Care

9  Facilities.  The City was unresponsive to Citizens and other community complaints about

10  enforcing the existing ordinance.  The City deliberately obstructed efforts to craft an effective

11  revised ordinance, causing the need for the City and City Council to extend the Temporary

12  Moratorium.  The City continued to improperly assert that there was little it could do to regulate

13  these uses and rectify over-concentration.

14      67.    On or about May 30, 2007, the City Council adopted Ordinance No. 2007-10, an

15  interim urgency ordinance extending for five months the Temporary Moratorium on the

16  establishment and operation of unlicensed Residential Care Facilities and Residential Care

17  Facilities-General, in all residential zoning districts of the City.

18      68.    On or about August 23, 2007, the Planning Commission held a public hearing on

19  the regulation of Residential Care Facilities and draft Ordinances.  Citizens participated in this

20  hearing and demanded effective regulation of Residential Care Facilities to cure the problems

21  associated with over-concentration in the Impacted Areas.

22      69.    On or about September 20, 2007, the Planning Commission held a further public

23  hearing on the regulation of Residential Care Facilities.  Again, Citizens participated in this

24  hearing and demanded effective regulation of Residential Care Facilities.

25      70.    Following the public hearing on September 20, 2007, the City Planning

26  Commission forwarded its recommendation on the draft Ordinances to the City Council.  The

27  Planning Commission recommended that the City Council adopt and Ordinance that would

28  include two key provisions proposed by Citizens: (1) a 1,000 foot dispersal requirement

-17-

1   between any two Residential Care Facilities in the Impacted Areas, regardless of whether the

2   Residential Care Facilities are permitted by right or with a use permit, or whether they are State

3   licensed ("1,000 Foot Dispersal Requirement"); and, (2) an "Overlay Zone" (*see* map attached

4   hereto as <u>Exhibit</u> "1") that would impose special requirements (including the 1,000 Foot

5   Dispersal Requirement) for Residential Care Facilities located within the Overlay Zone.

6          71.    On or about October 17, 2007, the City Council adopted Ordinance No. 2007-

7   116, an interim urgency ordinance extending for twelve months, until October 30, 2008, the

8   Temporary Moratorium on the establishment and operation of unlicensed Residential Care

9   Facilities and Residential Care Facilities-General, in all residential zoning districts of the City.

10         72.    On or about December 11 and December 18, 2007, the City Council held public

11   hearings to discuss the proposed new Group Residential Use Ordinance. Citizens participated

12   in these hearings and, again, demanded effective regulation of Residential Care Facilities to

13   cure the problems associated with over-concentration in the Impacted Areas.

14         73.    On or about January 8, 2008, the City Council voted to approve the proposed

15   new Group Residential Use Ordinance ("Proposed Ordinance").

16         74.    The second reading of the Proposed Ordinance is scheduled to take place at the

17   City Council hearing on January 22, 2008.

18         75.    The Proposed Ordinance is scheduled to take effect on February 20, 2008.

19   **<u>City Willfully Failed to Implement Necessary Regulations to Promote Health and Safety.</u>**

20         76.    Key aspects of the Proposed Ordinance include:

21         a.    Eliminates Federal Exception Permits from the Municipal Code.

22         b.    Defines "Integral Facilities" and "Integral Uses" and requires these uses, including

23               licensed and un-licensed Residential Care Facilities with 7 or more persons, to

24               obtain a use permit.

25         c.    Restricts the zones within the City in which new Residential Care Facilities may

26               be located. Existing illegal Residential Care Facilities will become " legal non-

27               conforming uses" and will be required to obtain a use permit within 90 days of the

28               effective date of the Proposed Ordinance.

1    d.   Abatement of Residential Care Facilities that are prohibited or require a use

2         permit, and fail to obtain a use permit in a timely manner, within 1 year of the

3         effective date of the Proposed Ordinance, or the expiration date of the Operator's

4         lease to use the property (assuming lease entered into before December 7, 2007),

5         or the expiration date of the Facility Operator's State license, whichever is soonest.

6         Facility Operators are permitted to apply for an extension of the abatement period.

7    e.   Adds new Chapter 20.91A to the Municipal Code to address use permit process for

8         existing legal non-conforming group residential uses in residential zones.

9    f.   Repeal of the Temporary Moratorium on the establishment and operation of new

10        Residential Care Facilities in the City.

11   77.   The City's Proposed Ordinance, however, excludes critical provisions that are

12   necessary to protect Citizens' health and safety and address over-concentration. For example:

13   a.   The City and City Council refused to establish a remedial plan to definitively

14        resolve over-concentration in the Impacted Areas by rejecting the 1,000 Foot

15        Dispersal Requirement and the Overlay Zone adopted by the Planning

16        Commission. (See Exhibit "1".)  These requirements would have attempted to

17        mitigate the severe health and safety problems that are currently prevalent in the

18        Impacted Areas where over-concentration of the Residential Care Facilities exists.

19   b.   The City and City Council refused to abate all illegal Residential Care Facilities

20        that are currently operating in the City.  Instead, the City and City Council will

21        allow the Facility Operators to obtain a use permit to continue operating.

22   78.   Citizens is informed and believes, and upon that basis alleges, that

23   Councilmember Stephen Rosansky owns real property in the Impacted Area, and that the City's

24   and City Council's reason for excluding from the Proposed Ordinance the 1,000 Foot Dispersal

25   Requirement and the proposed Overlay Zone is to ensure that Councilmember Rosansky could

26   continue to vote on issues related to Residential Care Facilities, when he would otherwise be

27   required to recuse himself due to the conflict of interest regulations because he owns real

28   property within the Overlay Zone. This is an improper basis for refusing to regulate.

-19-

79.    Then Mayor Rosansky concealed from the public the fact that he had a financial interest in property(s) that are, and have been, leased to Residential Care Facilities for approximately 3 or 4 years; failed to disclosure this financial interest in his California Fair Political Practices Commission Form 700 (Statement of Economic Interests); and, failed to recuse himself from voting on matters related to regulation of Residential Care Facilities in the Impacted Areas, in violation of the Political Reform Act.

80.    The City's and City Council's reasons for rejecting the Overlay Zone, 1,000 Foot Dispersal Requirement, specific standards with requirement to apply in the use permit and reasonable accommodation processes, and the requirement to abate all illegal uses, are pre-textual to the actual reasons, as alleged herein.

**City's Ordinance is Inconsistent with the General Plan and Zoning Ordinance.**

81.    The City's Proposed Ordinance is inconsistent with the City's General Plan and other legal requirements to ensure that the Ordinance is consistent with the General Plan.

82.    The City's General Plan Land Use Element provides that the City has a managed growth strategy focused on protecting and preserving the distinct residential character of its neighborhoods. However, the City knowingly facilitated the rampant unchecked growth of Residential Care Facilities, thereby creating over-concentration and institutionalized environment in the Impacted Areas.

83.    The City's conduct willfully violates the following General Plan Land Use Goals: LU1.1, LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2, LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8.

84.    The City's conduct also willfully violates section 20.10.010 of the City's Municipal Code, which sets forth the specific purposes of residential zoning districts. For example, residential district regulations are intended to:

   a.  Locate residential development in areas which are consistent with the General Plan and with standards of public health and safety established by the Municipal Code;

b. Ensure adequate light, air, privacy, and open space for each dwelling, and protect residents from the harmful effects of excessive noise, population density, traffic congestion, and other adverse environmental effects;

c. Protect residential areas from fires, explosions, landslides, toxic fumes and substances, and other public safety hazards; and,

d. Protect adjoining single-family residential districts from excessive loss of sun, Multifamily Residential (MFR) District. Provides areas for single-family and two-family residential land uses. (Mun. Code, § 20.10.010, subd. (A)-(B), (D)-(E).)

**City Willfully Failed to Respond to and Properly Document Incidents Reported by Citizens.**

85.    On numerous occasions, the Citizens have reported to the City Police Department incidents of disturbance at Residential Care Facilities (and surrounding areas) in the Impacted Areas that are operated by the Defendant Facility Operators.

86.    Citizens are informed and believe, and on that basis allege, that the City directed the City Police Department to employ a procedure whereby it would not respond to the calls reporting disturbance and/or properly identify the reported disturbance and/or report the disturbance unless the City Manager authorized such action or actions be taken.

87.    Citizens has also reported to the City Fire Department that new Residential Care Facilities in the Impacted Areas are in violation of the Uniform Building Code and City Municipal because they were established without approval, and do not comply with occupancy requirements. The Fire Department agreed with Citizens that these Residential Care Facilities are in violation of the Uniform Building Code and City Municipal Code.

88.    Citizens are also informed and believe, and on that basis allege, that the City directed the City Fire Department not to issue citations or to otherwise take corrective action for the alleged violations of the Uniform Building Code and City Municipal Code.

89.    The City's conduct and negligence constitutes interference with public services relating to health and safety, and violates Citizens' right to the same.

**Citizens Has Exhausted its Administrative Remedies.**

90.    Citizens realleges and incorporates all prior paragraphs of this

-21-

1    Petition/Complaint, inclusive, as though set forth herein.

2        91.    Citizens has exhausted its administrative remedies in this case. (*See Coalition*

3    *for Student Action v. City of Fullerton* (1984) 153 Cal.App.3d 1194 [exhaustion of

4    administrative remedies is a jurisdictional prerequisite to resort to the courts].)

5        92.    Citizens participated in the public hearing process when the City enacted the

6    2004 revisions to the Residential Care Facilities Ordinance.

7        93.    Citizens has participated in all public hearings related to the Proposed

8    Ordinance, demanding that the City and City Council adopt effective regulation of Residential

9    Care Facilities to address the negative health and safety impacts associated with over-

10    concentration of these facilities in the Impacted Areas, that would include, among other things,

11    the Overlay Zone, 1,000 Foot Dispersal Requirement, and the abatement of illegally established

12    and operated uses.

13        94.    Citizens has also met with the City on several occasions, submitted several

14    comment letters, including a formal Tort Claim Act Notice/demand letter dated October 9,

15    2007, to the City and City Council setting forth its position on the Proposed Ordinance, and the

16    allegations set forth herein.

17        95.    Citizens has spent significant time and expense to assist the City in developing

18    an ordinance that effectively regulates Residential Care Facilities in the City and Impacted

19    Areas to properly address the negative effects resulting from over-concentration. Citizens

20    relied on the City to draft an ordinance that protects the health, safety, and welfare of its

21    citizens. The City, however, has not responded to Citizens and its concerns in good faith.

22        96.    Citizens is serving an amended Tort Claim Act Notice/demand letter in January

23    2008. Given the City and City Council's failure to respond to Citizens' initial Tort Claim Act

24    Notice/Demand letter, dated October 9, 2007, and other numerous prior requests for relief,

25    Citizens believes that waiting for the City and City's response to the revised Tort Claims Act

26    Notice/demand letter would be futile. As such, Citizens' filing of the instant

27    Complaint/Petition is timely.

28    ///

-22-

# FIRST CAUSE OF ACTION

**(For a Writ under CCP § 1085  Directing the City and City Council to Enforce City**

**Municipal Code and other Ministerial Duties –**

**Against Defendants and Respondents City and City Council and Does 1-300)**

97.    Citizens realleges and incorporates all prior paragraphs of this Petition/Complaint, inclusive, as though set forth herein.

98.    This writ is necessary because Citizens has no adequate remedy at law.

99.    The City has a ministerial duty and is required to enforce the City's Municipal Code, Building and Safety Code, Fire Code, the Temporary Moratorium, and public nuisances. The City also has a ministerial duty to not interfere with the Police Department's and Fire Department's discharge of its public safety duties.

100.    Citizens has a right to require the City to perform its ministerial duties.

101.    Citizens requests that the Court issue a writ directing the City to:

    a.  Enforce the City's Proposed Ordinance when enacted.

    b.  Until the City's Proposed Ordinance is enacted, enforce the existing law regulating Residential Care Facilities.

    c.  Immediately abate all illegal Residential Care Facilities.

    d.  Immediately abate all Residential Care Facilities in the City that do not have valid Federal Exception Permits.

    e.  Require that Facility Operators obtain certificates of occupancy to ensure that Residential Care Facilities operate with the proper fire clearances.

    f.  Enforce the Temporary Moratorium and immediately abate all violations by the Defendant Facility Operators, and any other violators;

    g.  Abate all Residential Care Facilities in the City that were created illegally, operating illegally, or are otherwise unpermitted;

    h.  Abate all health and safety violations and public nuisances created by the over-concentration of Residential Care Facilities, including smoking in prohibited areas; trash and littering; loitering; and disposal of hazardous waste, including needles;

-23-

i. Stop interference with the Police Department's and Fire Department's discharge of their public safety duties, and make all reports of complaints and incidents of public disturbances available to Citizens and the public upon request.

j. Establish a clear protocol to handle Citizens' complaints that relate to Residential Care Facilities and the adverse impacts.

k. Revise the existing Municipal Code provisions governing Residential Care Facilities and Proposed Ordinance so that the Zoning Ordinance is consistent with the following General Plan Land Use Goals: LU1.1, LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2, LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8, as required by Government Code section 65860.

l. Revise the existing Municipal Code provisions governing Residential Care Facilities and Proposed Ordinance so that the Zoning Ordinance is consistent with section 20.10.010 of the City's Municipal Code, which sets forth the specific purposes of residential zoning districts.

102. The City Council abused its discretion and acted arbitrarily, capriciously and without due regard for Citizens' rights when it refused to adopt the Planning Commission's recommendations regarding:

a. Applying an Overlay Zone in the Impacted Areas (*see* Exhibit "1").

b. Requiring all new and existing Residential Care Facilities in the Impacted Areas to be subject to the 1,000 Foot Dispersal Requirement.

103. The City Council rejected the Planning Commission's recommendation in this regard so that Councilmember (and former Mayor) Rosansky could vote on the Proposed Ordinance regulating Residential Care Facilities. The City Council's improper rejection of the most effective means of addressing over-concentration of Residential Care Facilities in the Impacted Areas causes Citizens harm and prejudice.

///

///

-24-

## SECOND CAUSE OF ACTION

**(Damages for Deprivation of Civil Rights Under 42 U.S.C. § 1983 –**

**Against Respondents and Defendants City and City Council and Does 1-300)**

104.    Citizens realleges and incorporates all prior paragraphs of this Petition/Complaint, inclusive, as though set forth herein.

105.    The City and City Council, acting under the color of State law, violated Citizens' Civil Rights under the United States and California Constitutions, and 42 U.S.C. section 1983 by depriving Citizens certain federal Constitutional protections alleged herein, any one of which is sufficient to claim a violation of Citizens' civil rights. (*Barquis v. Merchants Collection Ass'n* (1972) 7 Cal.3d 94, 103 [a complaint is sufficient if it alleges facts which state a cause of action under any possible legal theory].)

106.    The City and City Council violated Citizens' substantive due process rights guaranteed by the Fourteenth Amendment. The City's affirmative acts, specifically adoption of the 2004 Ordinance and failure to include in the Proposed Ordinance the Overlay Zone, 1,000 Foot Dispersal Requirement, and an abatement requirement for all illegal uses, has created a perilous situation that renders Citizens more vulnerable to the dangers alleged herein at the hands of Defendant Facility Operators. (*See Kallstrom v. City of Columbus* (6th Cir. 1998) 136 F.3d 1055, 1066 [government "may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts"].)

107.    The City's and City Council's acts have caused special risk to the Citizens living in the Impact Areas that are not experienced by the public at large. The City and City Council knew that its actions caused serious dangers to health and public safety, and had sufficient time, at least 4 years, to take the appropriate actions – but did nothing. (*See Bukowski v. City of Akron* (6th Cir. 2003) 326 F.3d 702, 710 [discussing the "deliberate indifference" standard].)

108.    The City and City Council violated Citizens' right to procedural due process by refusing to adopt the Overlay Zone and 1,000 Foot Dispersal Requirement because it would impact then-Mayor Rosansky's ability to vote because he owns real property in the proposed Overlay Zone, and continuing to vote would constitute a conflict of interest. Such conduct

-25-

1    violates Citizens' procedural due process right to un-biased decision-makers.

2    109.    The City and City Council failed to address over-concentration of Residential

3    Care Facilities, enforce conflicts of interest regulations, report potential violations of the

4    California Political Reform Act, and to adopt the Overlay Zone and 1,000 Foot Dispersal

5    Requirement so that then-Mayor Rosansky could continue to vote.

6    110.    The City improperly employed a procedure whereby the Police Department does

7    not respond to calls from the Citizens and the community reporting disturbances at or near the

8    Residential Care Facilities, and/or properly identify the reported disturbances, and/or report the

9    disturbances unless the City Manager has authorized such action or actions be taken.

10    111.    The City also improperly directed the Fire Department not to issue citations or to

11    otherwise take corrective action with respect to Residential Care Facilities that it knows are in

12    violation of the Uniform Building Code and City Municipal Code.

13    112.    The City's conduct constitutes interference with pubic services relating to health

14    and safety, and violates Citizens' constitutional right to the same.  The City has also retaliated

15    against Citizens for demanding proper reporting and response to calls for disturbance.

16    113.    The City has allowed the establishment of Residential Care Facilities that violate

17    the law, and has refused to enforce its laws and abate illegal uses that are creating over-

18    concentration and the resulting negative impacts to Citizens.

19    114.    The right to be free from local government's deliberate disregard of the State's

20    fundamental processes are protected by substantive due process rights, that were clearly

21    established law at the time of the City's and City Council's actions.  (*Galland v. City of Clovis*

22    (2001) 24 Cal.4th 1003, 1034-36 [plaintiff has a valid substantive due process claim if the

23    injury is due to the defendants' deliberate disregard of the state's fundamental process; the

24    "flouting of the law" standard]; *see also Galland* Court's approval of *Mission Springs, Inc. v.*

25    *City of Spokane* (1998) 134 Wash.2d 947, 970 [City actions contrary to applicable ordinances

26    amount to flouting of the law].)

27    115.    The City and City Council deliberately violated and cavalierly disregarded

28    Constitutional protections by violating California and Federal Constitutional laws.

-26-

116.    The City and City Council also deliberately violated and cavalierly disregarded the State and local fundamental due process when they failed to enforce the City's Municipal Code, adopted the 2004 Ordinance, and failed to include in the Proposed Ordinance an Overlay Zone, 1,000 Foot Dispersal Requirement, and an abatement requirement for all illegal uses, all of which has resulted in the over-concentration of Residential Care Facilities in the Impacted Areas and created a perilous situation that renders Citizens more vulnerable to the dangers alleged herein at the hands of Defendant Facility Operators.

117.    Citizens is informed and believes, and on such information alleges that the City's and City Council's conduct as alleged herein constitutes an egregious, arbitrary, irrational, and capricious abuse of due process.

118.    The City's and City Council's flouting of due process requirements did not substantially advance any legitimate state interest and is not substantially nor reasonably related to the public health, safety, or general welfare.  Nor could such action substantially advance any legitimate state interest.  The City's and City Council's egregious conduct in flouting the well established laws caused Citizens damages.

119.    Citizens is entitled to due process rights guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 1, section 7 of the California Constitution, and this fact was clearly established law at the time of the City's and City Council's actions. Procedural Due Process requires that a person shall not be deprived of life, liberty, or property without due process of law.

120.    The City's and City Council's actions were tainted with fundamental procedural irregularity and were arbitrary or capricious.  (*Scott v. Greenville County* (4th Cir. 1983) 716 F.2d 1409, 1419 [finding these types of irregularities can be the basis for a procedural due process claim].)

121.    Procedural due process also includes the right to an unbiased decision-maker. (*Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1091.)  Hearings must be held by disinterested, unbiased decision makers.  (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1172-73.)  The City and City Council violated this right by

-27-

1  refusing to adopt the Overlay Zone and 1,000 Foot Dispersal Requirement because it would

2  impact then-Mayor Rosansky's ability to vote on issues impacting Residential Care Facilities in

3  the Impacted Areas.

4       122.   This grave unfairness impermissibly tainted Citizens' due process right to have

5  its concerns equitably considered. (*Stivers v. Pierce* (9th Cir. 1995) 71 F.3d 732, 747-48

6  [holding that where one member of a tribunal is actually biased or where circumstances create

7  the appearance that one member is biased then the proceedings violate due process].) The City

8  and City Council's refusal to consider Citizens' concerns by refusing to adopt the Overlay Zone

9  and 1,000 Foot Dispersal Requirement because it would impact then-Mayor Rosansky's ability

10  to vote on issues impacting Residential Care Facilities in the Impacted Areas, is improper.

11       123.   The City's and City Council's conduct violates clearly established statutory or

12  constitutional rights of which a reasonable person would have known. (*Charfauros v. Board of*

13  *Elections* (2001) 249 F.3d 941, 951-52.)

14       124.   It is objectively reasonable that the City and City Council, as well as City staff,

15  would know that their actions violated Citizens' constitutional civil rights. Additionally, they

16  were repeatedly put on notice by Citizens' numerous comments during public hearings, and

17  written correspondence to the City, that their actions violated Citizens' procedural and due

18  process rights.

19       **THIRD CAUSE OF ACTION**

20  **(For Negligence For Failure to Discharge Mandatory Duty – Against Respondents**

21  **and Defendants City and City Council and Does 1-300)**

22       125.   Citizens realleges and incorporates all prior paragraphs of this

23  Petition/Complaint, inclusive, as though set forth herein.

24       126.   Where a public entity is under a mandatory duty imposed by an enactment

25  designed to protect against the risk of particular kind of injury, the entity is liable for an injury

26  of that kind proximately caused by its failure to discharge the duty. (Gov. Code, § 815.6;

27  *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499-500 [Section 815.6 creates a private

28  right of action against a government entity for its negligent failure to discharge the duty].)

-28-

127.    The City and City Council has a duty to enforce its Municipal Code and to protect the health, safety, and welfare of its citizenry.

128.    The City and City Council violated this duty by failing to enforce State law, its Municipal Code and Temporary Moratorium, and its failure to abate illegal uses and public nuisances, as alleged herein, and failing to enact effective regulations to protect the health, safety, and welfare of Citizens by addressing the negative impacts associated with the over-concentration of Residential Care Facilities in the Impacted Areas.

129.    Citizens has been harmed as a result of the City's and City Council's failure to enforce State law, its Municipal Code, and Temporary Moratorium, and its failure to enact effective regulations to address the negative impacts associated with the over-concentration of Residential Care Facilities in the Impacted Areas, including but not limited to, continued increased exposure to second-hand smoke, littering, loitering, traffic, parking, hazardous waste, and safety risks.

130.    The City's and City Council's failure to enforce its duty was a substantial factor and/or the driving factor in causing Citizens' harm, as alleged herein.

## FOURTH CAUSE OF ACTION

### (For Unfair Business Practices in Violation of Cal. Bus. & Prof. Code § 17200 – Against Defendant Facility Operators and Does 1-300)

131.    Citizens realleges and incorporates all prior paragraphs of this Petition/Complaint, inclusive, as though set forth herein.

132.    Beginning at an exact date unknown to Citizens, but at least since 2004, the Defendant Facility Operators violated California Business and Professions Code section 17200 *et seq.* ("Section 17200").

133.    Defendant Facility Operators' acts and practices, as alleged herein, violate Section 17200, as follows:

a.    The Defendant Facility Operators established and operated (and continue to operate) Residential Care Facilities in violation of the City's Municipal Code, the City's Temporary Moratorium, and State laws, as alleged herein.

-29-

b. The Defendant Facility Operators have circumvented, and continue to violate, the State ADP-licensing requirements (and the Municipal Code Federal Exemption Permit requirement) by separating non-medical recovery, treatment, and/or detoxification services from the residential living quarters. The supervised services and living quarters are integral components of the same facility and operation: (1) the persons residing in the residential living quarters are required to participate in one or more of these services; (2) the facility operator arranges for transportation between living quarters location and services location; and, (3) elements of supervision, staffing, and control at both the services and living quarters locations are the same.

c. The Defendant Facility Operators have also circumvented, and continue to violate, the State ADP-licensing requirements (and the Municipal Code Federal Exemption Permit requirement) by artificially creating a series of sub-facilities that each provide supervised living quarters for 6 or fewer persons. The sub-facilities are integral components of the same facility and operation having greater than 6 persons. For example, the sub-facilities are: (1) located in the same facility, building, or group of buildings on the same or nearby property; (2) persons residing in these sub-facilities attend the same non-medical recovery, treatment, and/or detoxification services; and, (3) elements of supervision, staffing, and control at the sub-facility locations are the same.

d. By circumventing and continuing to violate State laws as alleged herein, Defendant Facility Operators are also circumventing and violating the zoning restrictions in City Municipal Code section 20.10.020, and the Federal Exemption Permit Requirement set forth in City Municipal Code sections 20.91.015, 20.91.020, and 20.91.035.

134. The Defendant Facility Operators' conduct qualifies as unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200.

135. The unlawful, unfair and fraudulent business practices of the Defendant Facility

-30-

1    Operators, as described above, has caused harm to Citizens, and, as such, Citizens is entitled to

2    all remedies, as determined by the Court under Business and Professions section 17203.

3         136.    Such remedies include damages for the diminution of the Citizens' property

4    values and lack of marketability of their properties, in an amount to be established in excess of

5    $250 million.

6         137.    Citizens has demanded that the City take action against the Defendant Facility

7    Operators from continuing to operate in violation of State and City laws.  The City refuses to do

8    so, even though it has admitted that the Defendant Facility Operators are operating many

9    Residential Care Facilities illegally.

10                          **FIFTH CAUSE OF ACTION**

11        **(For Public Nuisance – Against Defendant Facility Operators and Does 1-300)**

12        138.    Citizens realleges and incorporates all prior paragraphs of this

13    Petition/Complaint, inclusive, as though set forth herein.

14        139.    A public nuisance is one which affects at the same time an entire community or

15    neighborhood, or any considerable number of persons, although the extent of the annoyance or

16    damage inflicted upon individuals may be unequal.  (Civ. Code, § 3480.)

17        140.    A public nuisance is any act or omission which interferes with the interests of

18    the community or the comfort and convenience of the general public and includes interference

19    with the public health, comfort, and convenience. (*See generally Venuto v. Owens-Corning*

20    *Fiberglas Corp.* (1971) 22 Cal.App.3d 116.)

21        141.    The necessary elements for proof of a cause of action for public nuisance include

22    the existence of a duty and causation, and, although it is not necessary to show that harm

23    actually occurred, plaintiffs must show that a defendant's acts are likely to cause a significant

24    invasion of a public rights. (*In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988.)

25        142.    Defendant Facility Operators are responsible for compliance with the City's

26    Municipal Code, including "the obligation not to maintain, permit, cause, or create a public

27    nuisance . . . ." (Mun. Code, § 10.50.030.)  Defendant Facility Operators' lack of oversight of

28    their businesses has prevented Citizens and other surrounding property owners from the full

-31-

1    enjoyment of their properties. (*See Armory Park Neighborhood Association v. Episcopal*

2    *Community Services in Arizona* (1985) 712 P.2d 914 [injunction for public nuisance issued;

3    center operator had derivative responsibility for the acts of clients; praiseworthy nature of its

4    activity was not sufficient to make the harms, including littering and noise, reasonable].)

5        143.    Every violation of the City's Municipal Code by Defendant Facility Operators is

6    a public nuisance. (Mun. Code, § 10.50.020, subd. (I).)

7        144.    Also, all conduct by Defendant Facility Operators that is "[r]epetitive, boisterous

8    or unruly conduct by the owner or occupants of the property that occurs on the property when

9    that conduct: (1) is offensive to a person of ordinary sensibility; (2) continues after a written or

10   oral request to terminate the conduct; (3) is offensive to a considerable number of people; and,

11   (4) in the opinion of the Enforcement Officer, results in any of the impacts described in Section

12   10.50.010 of this chapter, is a public nuisance. (Mun. Code, § 10.50.020, subd. (K).)

13       145.    Defendant Facility Operators has created a condition that is harmful to the

14   Citizens' health, indecent and offensive to the Citizens' senses, and is an obstruction to the

15   Citizens' free use of their property, so as to interfere with the comfortable enjoyment of life or

16   property. Residential Care Facilities pose a clear and present danger to the public health, safety

17   and welfare, including that of Citizens, employees and patrons of the subject premises and to

18   residents and visitors to the properties and the surrounding neighborhood. Specifically:

19       a.    <u>Illegal Operations</u>. The Defendant Facility Operators opened and continue to

20           operate Residential Care Facilities that violate State and local laws.

21       b.    <u>Smoking</u>. Well-documented public health issues are associated with second-hand

22           smoke, an established carcinogen. Citizens' members have been subjected to

23           continued and increased exposure to second-hand smoke, and litter caused by ash

24           and cigarette butts, as a result of the over-concentration of Group Residential

25           Facilities in the Impacted Areas. Defendant Facility Operators do not allow

26           smoking inside the facilities, therefore encouraging smoking outside. Defendant

27           Facility Operators are also allowing residents to smoke in prohibited areas, for

28           example, the public beach, in violation of Municipal Code section 11.08.080.

-32-

CONCERNED CITIZENS OF NEWPORT BEACH'S VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT

1    c. Loitering. The over-concentration of Residential Care Facilities in the Impacted

2    Areas has resulted in an increase in the amount of noise, loitering, and littering

3    outside residential homes and in public right of ways (e.g., sidewalks, beach

4    boardwalks, etc.) in the Impacted Areas.

5    d. Safety. The over-concentration of Residential Care Facilities in the Impacted

6    Areas has increased the presence of parolees, probationers, and persons serving

7    conditional probation and alternative sentencing that reside in dense residential

8    neighborhoods in close proximity to schools and child care facilities in the

9    Impacted Areas, posing a safety concern. Citizens' members have observed and

10   experienced criminal activity caused by Residential Care Facility residents,

11   including, but not limited to, an increase in vandalism, theft, drug-related

12   incidents, and drug dealing in the Impacted Areas.

13   e. Parking. With increased density and traffic, Residential Care Facilities in the

14   Impacted Areas strain already limited off-street and on-street parking resources.

15   Parking is particularly overburdened with weekend visitors, especially in the older

16   coastal communities, defined in the Impacted Areas.

17   146.   The conditions created by Defendant Facility Operators affects a substantial

18   number of people, including Citizens, in the Impacted Areas and the City.

19   147.   An ordinary person would be reasonably annoyed or disturbed by the conditions.

20   148.   The seriousness of the harm outweighs the social utility of Defendant Facility

21   Operators' conduct.

22   149.   Citizens did not consent to the Defendant Facility Operators' conduct.

23   150.   Citizens has suffered, and continues to suffer, harm that is different from the

24   type of harm suffered by the general public.

25   151.   Defendant Facility Operators' conduct was a substantial factor in causing

26   Citizens' harm.

27   152.   Citizens' remedies include damages for the diminution of Citizens' members'

28   property values and lack of marketability of such properties, in an amount to be established in

-33-

1  excess of $250 million.

2      153.    Citizens' remedies also include a permanent injunction preventing Defendant

3  Facility Operators from operating in a manner that creates a public nuisance, and for abatement.

4  ### SIXTH CAUSE OF ACTION

5  **(For Declaratory Relief – Against All Respondents and Defendants and Does 1-300)**

6      154.    Citizens realleges and incorporates all prior paragraphs of this

7  Petition/Complaint, inclusive, as though set forth herein.

8      155.    The controversies alleged herein give rise to the need for a judicial determination

9  of rights, for which Citizens seeks a judicial determination of the following, on behalf of

10  Citizens and its members:

11      a.  The City has already determined that there is over-concentration of Residential

12          Care Facilities in the Impacted Areas.  Thus, the City has the right to eliminate the

13          over-concentration of Residential Care Facilities in the Impacted Areas.

14      b.  The City has a ministerial duty and is required to enforce the City's Municipal

15          Code, Building and Safety Code, Fire Code, the Temporary Moratorium, and to

16          abate public nuisances.  The City also has a ministerial duty to not interfere with

17          the Police Department's and Fire Department's discharge of their public safety

18          duties in the City.

19      c.  Citizens has a right to require the City to perform its ministerial duties.

20      d.  The City has a duty to enforce the City's Proposed Ordinance when enacted.

21      e.  The City has a duty, until the City's Proposed Ordinance is enacted, to enforce the

22          existing law regulating Residential Care Facilities.

23      f.  The City has a duty to immediately abate all illegal Residential Care Facilities.

24      g.  The City has a duty to immediately abate all Residential Care Facilities in the City

25          that do not have valid Federal Exception Permits.

26      h.  The City has a duty to require that Facility Operators obtain certificates of

27          occupancy to ensure that Residential Care Facilities operate with the proper fire

28          clearances.

i.  The City has a duty to enforce the Temporary Moratorium and immediately abate all violations by the Defendant Facility Operators, and any other violators;

j.  The City has a duty to abate all Residential Care Facilities in the City that were created illegally, operating illegally, or are otherwise unpermitted;

k.  The City has a duty to abate all health and safety violations and public nuisances created by the over-concentration of Residential Care Facilities, including increased smoking in prohibited areas; trash and littering; loitering; vandalism; disposal of hazardous waste, including needles; drug-dealing; and, drug-related incidents.

l.  The City has a duty to stop interference with the Police Department's and Fire Department's discharge of their public safety duties, and make all reports of incidents of public disturbances available to Citizens and other members of the public upon request.

m.  The City has a duty to establish a clear protocol to handle Citizens' complaints that relate to Residential Care Facilities and the adverse impacts.

n.  The City has a duty to revise the existing Municipal Code provisions governing Residential Care Facilities and Proposed Ordinance so that the Zoning Ordinance is consistent with the following General Plan Land Use Goals: LU1.1, LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2, LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8, as required by Government Code section 65860.

o.  The City has a duty to revise the existing Municipal Code provisions governing Residential Care Facilities and Proposed Ordinance so that the Zoning Ordinance is consistent with section 20.10.010 of the City's Municipal Code, which sets forth the specific purposes of residential zoning districts.

p.  The City has a duty to regulate Residential Care Facilities to reduce over-concentration and the resulting negative impacts.

-35-

q.  The City Council abused its discretion and acted arbitrarily, capriciously and without due regard for Citizens' rights when it refused to adopt the Planning Commission's recommendations regarding: (1) Applying an Overlay Zone in the Impacted Areas (*see* Exhibit "1"); and, (2) Requiring all new and existing Residential Care Facilities in the Impacted Areas to be subject to the 1,000 Foot Dispersal Requirement.

r.  The City Council improperly rejected the Planning Commission's recommendation in this regard so that Councilmember (and former Mayor) Rosansky could vote on the Proposed Ordinance regulating Residential Care Facilities.

s.  The City Council's improper rejection of the most effective means of addressing over-concentration of Residential Care Facilities in the Impacted Areas causes Citizens harm and prejudice.

156.    Citizens has no adequate or speedy remedy at law, other than that herein prayed, by which the rights of Citizens may be determined.

## DAMAGES AND ATTORNEYS FEES

157.    As a direct and proximate result of the City's and City Council's actions and inactions, Citizens has employed the law firm of Jackson, DeMarco, Tidus, Petersen & Peckenpaugh to enforce its rights threatened by the conduct of the City and City Council, as alleged herein.  As such, Citizens is entitled to reimbursement of expenses and attorneys' fees reasonably incurred in this matter pursuant to Code of Civil Procedures sections 1021.5 and 1036, Government Code section 800, and 42 U.S.C. section 1988, and to damages estimated to be in excess of $250 million.

158.    This action will result in the enforcement of an important right affecting the public interest, that being the City's and City Council's enforcement of the City Municipal Code and Temporary Moratorium, among other rights alleged herein.

159.    The City's and City Council's conduct in failing to perform duties set forth herein is arbitrary and capricious.

160.    The City's and City Council's knowing violation of Citizens' constitutionally guaranteed civil rights alleged herein evidenced reckless and callous indifference to such rights.

**PRAYER FOR RELIEF**

**WHEREFORE**, Petitioner and Plaintiff Citizens prays for judgment, as follows:

161.    A writ, pursuant to Code of Civil Procedure section 1085, directing the City and the City Council to:

    a.  Enforce the City's Proposed Ordinance when enacted.

    b.  Until the City's Proposed Ordinance is enacted, enforce the existing law regulating Residential Care Facilities.

    c.  Immediately abate all illegal Residential Care Facilities.

    d.  Immediately abate all Residential Care Facilities in the City that do not have valid Federal Exception Permits.

    e.  Require that Facility Operators obtain certificates of occupancy to ensure that Residential Care Facilities operate with the proper fire clearances.

    f.  Enforce the Temporary Moratorium and immediately abate all violations by the Defendant Facility Operators, and any other violators;

    g.  Abate all Residential Care Facilities in the City that were created illegally, operating illegally, or are otherwise unpermitted;

    h.  Abate all health and safety violations and public nuisances created by the over-concentration of Residential Care Facilities, including smoking in prohibited areas; trash and littering; loitering; and disposal of hazardous waste, including needles;

    i.  Stop interference with the Police Department's and Fire Department's discharge of their public safety duties, and make all reports of complaints and incidents of public disturbances available to Citizens and the public upon request.

    j.  Establish a clear protocol to handle Citizens' complaints that relate to Residential Care Facilities and the adverse impacts.

    k.  Revise the existing Municipal Code provisions governing Residential Care

-37-

Facilities and Proposed Ordinance so that the Zoning Ordinance is consistent with the following General Plan Land Use Goals: LU1.1, LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2, LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8, as required by Government Code section 65860.

l.  Revise the existing Municipal Code provisions governing Residential Care Facilities and Proposed Ordinance so that the Zoning Ordinance is consistent with section 20.10.010 of the City's Municipal Code, which sets forth the specific purposes of residential zoning districts.

m.  Apply an Overlay Zone in the Impacted Areas (*see* Exhibit "1"); require all new and existing Residential Care Facilities in the Impacted Areas to be subject to the 1,000 Foot Dispersal Requirement; and, disperse the number of Residential Care Facilities and beds so that 94 percent of the Residential Care Facilities in the City are not located in the 1.5 mile stretch of the Impacted Area that contains only 27 percent of the City's population.

162.  For a judgment declaring that the City and City Council's actions:

a.  Constitute a violation of the Municipal Code;

b.  Deprived Citizens of its Civil Rights under 42 U.S.C. section 1983;

c.  Constitute a violation of Citizens' substantive and procedural due process rights under the law; and,

d.  Improperly deny Citizens' important public services that compromises Citizens' right to public health and safety.

163.  For damages resulting from the City's and City Council's violations of Citizens' constitutional civil rights, in an amount estimated to exceed $250 million, to be proven at trial.

164.  For damages resulting from the City's and City's Council's negligence for failing to discharge mandatory duties prescribed by the City's Municipal Code.

165.  For damages for Defendant Facility Operators' unfair business practices and violations of California Business and Professions Code section 17200, and conduct alleged

-38-

1    herein to constitute a public nuisance, in an amount estimated to exceed $250 million, to be

2    proven at trial.

3        166.    For a preliminary and permanent injunction enjoining the Defendant Facility

4    Operators' unfair business practices and conduct alleged herein to constitute a public nuisance.

5        167.    For an order declaring the respective rights of the parties, as follows:

6        a.   The City has already determined that there is over-concentration of Residential

7            Care Facilities in the Impacted Areas.  Thus, the City has the right to eliminate the

8            over-concentration of Residential Care Facilities in the Impacted Areas.

9        b.   The City has a ministerial duty and is required to enforce the City's Municipal

10           Code, Building and Safety Code, Fire Code, the Temporary Moratorium, and

11           public nuisances.  The City also has a ministerial duty to not interfere with the

12           Police Department's discharge of its public safety duties.

13       c.   Citizens has a right to require the City to perform its ministerial duties.

14       d.   The City has a duty to enforce the City's Proposed Ordinance when enacted.

15       e.   The City has a duty, until the City's Proposed Ordinance is enacted, to enforce the

16           existing law regulating Residential Care Facilities.

17       f.   The City has a duty to immediately abate all illegal Residential Care Facilities.

18       g.   The City has a duty to immediately abate all Residential Care Facilities in the City

19           that do not have valid Federal Exception Permits.

20       h.   The City has a duty to require that Facility Operators obtain certificates of

21           occupancy to ensure that Residential Care Facilities operate with the proper fire

22           clearances.

23       i.   The City has a duty to enforce the Temporary Moratorium and immediately abate

24           all violations by the Defendant Facility Operators, and any other violators;

25       j.   The City has a duty to abate all Residential Care Facilities in the City that were

26           created illegally, operating illegally, or are otherwise unpermitted;

27       k.   The City has a duty to abate all health and safety violations and public nuisances

28           created by the over-concentration of Residential Care Facilities, including

-39-

1    increased smoking in prohibited areas; trash and littering; loitering; vandalism;

2    disposal of hazardous waste, including needles; drug dealing; and, drug-related

3    incidents.

4    l.    The City has a duty to stop interference with the Police Department's and Fire

5        Department's discharge of their public safety duties, and make all reports of

6        incidents of public disturbances available to Citizens and other members of the

7        public upon request.

8    m.   The City has a duty to establish a clear protocol to handle Citizens' complaints

9        that relate to Residential Care Facilities and the adverse impacts.

10   n.    The City has a duty to revise the existing Municipal Code provisions governing

11       Residential Care Facilities and Proposed Ordinance so that the Zoning Ordinance

12       is consistent with the following General Plan Land Use Goals: LU1.1, LU1.2,

13       LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5,

14       LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2,

15       LU5.1.3, LU5.1.4, and LU5.1.7, and LU5.1.8, as required by Government Code

16       section 65860.

17   o.    The City has a duty to revise the existing Municipal Code provisions governing

18       Residential Care Facilities and Proposed Ordinance so that the Zoning Ordinance

19       is consistent with section 20.10.010 of the City's Municipal Code, which sets

20       forth the specific purposes of residential zoning districts.

21   p.    The City has a duty to regulate Residential Care Facilities to reduce over-

22       concentration and the resulting negative impacts.

23   q.    The City Council abused its discretion and acted arbitrarily, capriciously and

24       without due regard for Citizens' rights when it refused to adopt the Planning

25       Commission's recommendations regarding: (1) Applying an Overlay Zone in the

26       Impacted Areas (see Exhibit "1"); and, (2) Requiring all new and existing

27       Residential Care Facilities in the Impacted Areas to be subject to the 1,000 Foot

28       Dispersal Requirement.

1      r.   The City Council improperly rejected the Planning Commission's

2           recommendation in this regard so that Councilmember (and former Mayor)

3           Rosansky could vote on the Proposed Ordinance regulating Residential Care

4           Facilities.

5      s.   The City Council's improper rejection of the most effective means of addressing

6           over-concentration of Residential Care Facilities in the Impacted Areas causes

7           Citizens harm and prejudice.

8      t.   The City is required to issue a finding that over-concentration of Residential Care

9           Facilities exists in the City and Impacted Areas.

10     168.   For attorneys' fees and costs pursuant to Code of Civil Procedure sections

11   1021.5 and 1036, Government Code section 800, and 42 U.S.C. section 1988, according to

12   proof.

13     169.   For costs of suit incurred herein.

14     170.   For such other and further relief as the Court may deem just and proper.

15

16   DATED:    January 22, 2008          Respectfully submitted,

17                                       JACKSON, DeMARCO, TIDUS, PETERSEN &
                                         PECKENPAUGH
18                                       MICHAEL L. TIDUS
                                         ALENE M. TABER
19                                       KATHRYN M. CASEY

20

21                                       By: _____

22                                           Alene M. Taber
                                         Attorneys for Petitioner and Plaintiff CONCERNED
23                                       CITIZENS OF NEWPORT BEACH

24

25

26

27

28

-41-

## VERIFICATION

I have read the foregoing **VERIFIED PETITION FOR WRIT OF MANDATE AND
COMPLAINT** and know its contents.

☐   I am a party to this action. The matters stated in the foregoing document are true
of my own knowledge except as to those matters which are stated on information and belief, and
as to those matters I believe them to be true.

I am ☒ a Member ☐ an Officer ☐ a partner ☐ an agent of CONCERNED
CITIZENS OF NEWPORT BEACH, a party to this action, and am authorized to make this
verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and on that ground allege that the matters stated in the
foregoing document are true. ☒ The matters stated in the foregoing document are true of my
own knowledge, except as to those matters which are stated on information and belief, and as to
those matters I believe them to be true.

☐   I am one of the attorneys for _____, a party to this action. Such party is
absent from the county of aforesaid where such attorneys have their offices, and I make this
verification for and on behalf of that party for that reason. I am informed and believe and on that
ground allege that the matters stated in the foregoing document are true.

Executed on January 22, 2008.

I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

CONCERNED CITIZENS OF NEWPORT BEACH, a
nonprofit mutual benefit corporation.

By: _____

Denys H. Oberman, Member on behalf of
CONCERNED CITIZENS OF NEWPORT
BEACH

767027.1

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Michael L. Tidus, SBN 126425
JACKSON, DeMARCO, TIDUS, PETERSEN & PECKENPAUGH
2030 Main Street,
Irvine, CA 92614
TELEPHONE NO.: 949-752-8585    FAX NO.: 949-752-0597
ATTORNEY FOR *(Name):* Concerned Citizens of Newport Beach

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ORANGE**
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: P.O. Box 22024
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME: Concerned Citizens v. City of Newport Beach, et al.

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**JAN 22 2008**

ALAN SLATER, Clerk of the Court

BY: 30 2008 DEPUTY

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER **00101684** |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder  Filed with first appearance by defendant *(Cal. Rules of Court, rule 3.402)* | JUDGE/DEPT: JUDGE DEREK W. HUNT DEPT. C24 |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☒ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve    e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence    f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☒ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: January 22, 2008

KATHRYN M. CASEY
_____
(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov