**SUM-100**

# SUMMONS ON FIRST AMENDED COMPLAINT
## *(CITACION JUDICIAL)*
ORIGINAL

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**FILED**

FEB 08 2008

ALAN SLATER, Clerk of the Court

BY Y. MEJIA

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
CITY OF NEWPORT BEACH; CITY COUNCIL OF THE CITY OF NEWPORT BEACH; MORNINGSIDE RECOVERY, LLC; SOBER LIVING BY THE SEA, INC.; CRC HEALTH GROUP, INC. (defendants cont'd on attached sheet)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CONCERNED CITIZENS OF NEWPORT BEACH

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia. Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* 30-2008 00101684 |
|---|---|

Superior Court of California
County of Orange
700 Civic Center Drive West
Santa Ana, CA 92701
CENTRAL JUSTICE CENTER

Dept. C23
Judge Moss

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael L. Tidus. SBN 126425          Tel: 949-752-8585          Fax: 949-752-0597
JACKSON, DeMARCO, TIDUS, PETERSEN & PECKENPAUGH
2030 Main Street, Suite 1200
Irvine, CA 92614

DATE: FEB 0 8 2008          **ALAN SLATER**          Clerk, by *Yolanda Mejia* Deputy
*(Fecha)*                                          *(Secretario)* **YOLANDA MEJIA**          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 American LegalNet, Inc. www.USCourtForms.com |
|---|---|---|

EXHIBIT B 

SUM-200(A)

| SHORT TITLE: CONCERNED CITIZENS OF NEWPORT BEACH vs. CITY OF NEWPORT BEACH, et al. | CASE NUMBER: 30-2008 00101684 |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff     ☒ Defendant     ☐ Cross-Complainant     ☐ Cross-Defendant

PACIFIC SHORES RECOVERY; OCEAN RECOVERY, LLC; BALBOA HORIZONS RECOVERY SERVICES, LP; NEWPORT COAST RECOVERY, LP; THE KRAMER CENTER AT NEWPORT BEACH; THE SHORES TREATMENT AND RECOVERY; MIRAMAR HEALTH, INC.; NARCONON SOUTHERN CALIFORNIA; and, DOES 1 to 300, inclusive.

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

American LegalNet, Inc.
www.FormsWorkflow.com

I hereby certify the foregoing instrument consisting of _2_ page(s) is a true and correct copy of the original on file in this court.

**FEB 1 9 2008**

ATTEST: (DATE)_____

ALAN SLATER, EXECUTIVE OFFICER AND CLERK OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY _____ , DEPUTY

DENISSE SANDOVAL

1  MICHAEL L. TIDUS, State Bar No. 126425
   mtidus@jdtplaw.com
2  ALENE M. TABER, State Bar No. 218554
   ataber@jdtplaw.com
3  KATHRYN M. CASEY, State Bar No. 227844
   kcasey@jdtplaw.com
4  JACKSON, DeMARCO, TIDUS, PETERSEN
   & PECKENPAUGH
5  2030 Main Street, Suite 1200
   Irvine, California 92614
6  Phone (949) 752-8585
   Fax (949) 752-0597
7
8  Attorneys for Petitioner and Plaintiff
   CONCERNED CITIZENS OF NEWPORT BEACH

**ORIGINAL**

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

FEB 08 2008

ALAN SLATER, Clerk of the Court

BY Y. MEJIA

9
10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                          COUNTY OF ORANGE

12

13  CONCERNED CITIZENS OF NEWPORT        CASE NO. 30-2008 00101684
    BEACH,
14                                       ASSIGNED TO THE HONORABLE
           Petitioner and Plaintiff,    ROBERT J. MOSS, DEPT. C23
15
    vs.
16                                       **FIRST AMENDED VERIFIED
    CITY OF NEWPORT BEACH; CITY          PETITION FOR WRIT OF MANDATE**
17  COUNCIL OF THE CITY OF NEWPORT       **[CODE CIV. PROC § 1085] AND**
    BEACH; MORNINGSIDE RECOVERY,         **COMPLAINT BY PETITIONER AND**
18  LLC; SOBER LIVING BY THE SEA, INC.;  **PLAINTIFF CONCERNED CITIZENS**
    CRC HEALTH GROUP, INC.; PACIFIC      **OF NEWPORT BEACH, FOR:**
19  SHORES RECOVERY; OCEAN
    RECOVERY, LLC; BALBOA HORIZONS       **(1) DECLARATORY RELIEF;**
20  RECOVERY SERVICES, LP; NEWPORT       **(2) DAMAGES FOR CIVIL**
    COAST RECOVERY, LP; THE KRAMER           **RIGHTS VIOLATIONS;**
21  CENTER AT NEWPORT BEACH; THE         **(3) NEGLIGENCE FOR FAILURE TO**
    SHORES TREATMENT AND RECOVERY;           **DISCHARGE MANDATORY**
22  MIRAMAR HEALTH, INC.; NARCONON           **DUTIES;**
    SOUTHERN CALIFORNIA; and, DOES 1 to  **(4) VIOLATION OF BUS. & PROF.**
23  300, inclusive,                          **CODE, § 17200;**
                                         **(5) PUBLIC NUISANCE**
24         Respondents and Defendants.

25

26

27

28         Plaintiff and Petitioner Concerned Citizens of Newport Beach alleges as follows:

-1-                                                      768178.2

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

### THE PARTIES

1. Petitioner and Plaintiff Concerned Citizens of Newport Beach ("Citizens") is a nonprofit mutual benefit corporation organized under the Nonprofit Mutual Benefit Corporation Law. Citizens' purpose is to enhance and provide a safe and healthy living environment for the citizens and residents of the City of Newport Beach. Citizens' members reside in the Balboa Peninsula, Lido Isle, Lido Village, West Newport, Corona del Mar, Newport Heights, and Santa Ana Heights areas (the "Impacted Areas") of the City of Newport Beach. Citizens' members reside next to or near residential care facilities owned and/or operated by the drug and alcohol rehabilitation Defendants (as alleged in paragraphs 4 to 14 herein), and are negatively impacted by their operations.

2. Respondent and Defendant City of Newport Beach ("City"), is a charter city, located in the County of Orange ("County"), State of California ("State").

3. Respondent and Defendant City Councilmembers ("City Council"), are individuals beings sued in their official capacities as the City Mayor and City Councilmembers.

4. Defendant Morningside Recovery, LLC, owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

5. Defendant Sober Living by the Sea, Inc., owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

6. Defendant CRC Health Group, Inc., is based in Cupertino, California, and is the owner of Defendant Sober Living By the Sea, Inc.

7. Defendant Pacific Shores Recovery owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

8. Defendant Ocean Recovery, LLC, owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

9. Defendant Balboa Horizons Recovery Services, LP, owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

10. Defendant Newport Coast Recovery, LP, owns and/or operates drug and alcohol

rehabilitation extended care treatment program facilities in the City of Newport Beach.

11.    Defendant The Kramer Center at Newport Beach owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

12.    Defendant The Shores Treatment and Recovery owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

13.    Defendant Miramar Health, Inc., owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

14.    Defendant Narconon Southern California owns and/or operates drug and alcohol rehabilitation extended care treatment program facilities in the City of Newport Beach.

15.    All Defendants identified in paragraphs 4 to 14 shall be collectively referred to as the Defendant "Facility Operators."

16.    Citizens is informed and believes that a number of persons and entities own property upon which the Defendant Facility Operators operate drug and alcohol rehabilitation extended care treatment program facilities located in the City, and as such, are identified as "Property Owners." Citizens may further amend its Complaint and Petition to name the Property Owners as Doe Defendants as that information is discovered.

17.    The true names and capacities for Respondents and Defendants sued herein as Does 1 through 300, inclusive, are unknown at this time to Citizens, who therefore sues each such Respondents and Defendants by such fictitious names. Citizens is informed and believes, and thereon alleges, that there may be additional Facility Operators and Property Owners. Citizens will amend this Petition/Complaint to allege the true names and capacities when they have been ascertained.

## GENERAL ALLEGATIONS

### State Regulation of Residential Care Facilities.

18.    State law requires Alcoholism or Drug Abuse Recovery or Treatment Facilities (Health & Saf. Code, §§ 11834.01, et seq.) to obtain a State license from the State Department of Alcohol and Drug Programs ("ADP") to operate.

19.    The State defines an "alcoholism or drug abuse recovery or treatment facility" as

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1  "any premises, place, or building that provides 24-hour residential nonmedical services to
2  adults who are recovering from problems related to alcohol, drug ... misuse or abuse, and who
3  need ... recovery treatment or detoxification services." (Health & Saf. Code, § 11834.02, subd.
4  (a).)

5      20.    Under the State's implementing regulations, an "alcoholism or drug abuse
6  recovery or treatment facility" may mean "any facility, building, *or group of buildings*."
7  (9 Cal. Code Regs., § 10501, subd. (a)(27) [emphasis added].)

8      21.    To qualify as "alcoholism or drug abuse recovery or treatment facility", the State
9  requires at least one of the following non-medical services to be provided: (1) recovery
10 services, (2) treatment services, or (3) detoxification services." (Health & Saf. Code,
11 § 11834.26.)

12     22.    State law provides that no "alcoholism or drug abuse recovery or treatment
13 facility" may be operated, established, or maintained without first obtaining a valid license from
14 the ADP. (Health & Saf. Code, § 11834.30.) A single ADP-issued license may be obtained for
15 "a facility wherein separate buildings or portions of a residential facility are integral
16 components of a single alcoholism or drug abuse recovery or treatment facility and all of the
17 components of the facility are managed by the same licensee." (Health & Safety Code, §
18 11834.09.)

19     23.    State law also provides that an "alcoholism or drug abuse recovery or treatment
20 facility" serving six or fewer persons is considered "a residential use of property." The
21 residents and operators of such a facility are considered a family for the purposes of any law or
22 zoning ordinance relating to the residential use of property. (Health & Saf. Code, § 11834.23.)

23     24.    The City's Municipal Code prior to the effective date of Ordinance No. 2008-5
24 includes two residential use classifications for Residential Care Facilities:

25     a.    "Residential Care, General. Shared living quarters (without separate kitchen or
26          bathroom facilities for each room or unit) for seven or more persons with physical
27          or mental impairments that substantially limit one or more of such person's major
28          life activities when such persons are not living together as a single housekeeping

-4-

768178.2

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

unit. This classification includes, but is not limited to, group homes, sober living environments, recovery facilities and establishments providing non-medical care for persons in need of personal services, supervision, protection or assistance essential for sustaining the activities of daily living." (Mun. Code, § 20.05.030, subd. (D).)

b. "Residential Care, Limited. Shared living quarters (without separate kitchen and bathroom facilities for each room or unit) for six or fewer persons with physical or mental impairments that substantially limit one or more of such person's major life activities. This classification also includes, but is not limited to, group homes, sober living environments, recovery facilities, and establishments providing non-medical care for persons in need of personal services, supervision, protection, or assistance essential for sustaining the activities of daily living." (Mun. Code, § 20.05.030, subd. (E).)

25. The City's Municipal Code prior to the effective date of Ordinance No. 2008-5 defines "Campus" as "three or more buildings in a residential zone within a three hundred (300) foot radius of one another that are used together for a common purpose where one or more of the buildings provides a service for the occupants of all the buildings such as when one building serves as a kitchen/food service area for the occupants of the other buildings." (Mun. Code, § 20.03.030.)

26. The City's Municipal Code prior to the effective date of Ordinance No. 2008-5 allows Residential Care, Limited, as a permitted use in all residential zones. Residential Care, General, uses are not permitted in R-A and R-1 zones, but are expressly allowed through a Federal Exception Permit in R-1.5, R-2, and MFR zones. (Mun. Code, § 20.10.020.)

27. The City's Municipal Code prior to the effective date of Ordinance No. 2008-5 also provides: "No building permit or certificate of occupancy shall be issued in any case where a use permit, variance, or Federal Exception Permit is required by the terms of this code unless and until such use permit, variance or Federal Exception Permit has been granted by the Planning Director or the Planning Commission or by the affirmative vote of the City Council on

768178.2

appeal or review and then only in accordance with the terms and conditions of the use permit, variance or Federal Exception Permit granted." (Mun. Code, § 20.91.015.)

28.     The City's Municipal Code prior to the effective date of Ordinance No. 2008-5 also provides: "An application for a use permit, variance, or Federal Exception Permit shall be filed in a manner consistent with the requirements contained in Chapter 20.90, Application Filing and Fees." (Mun. Code, § 20.91.020.)

29.     The City's Municipal Code prior to the effective date of Ordinance No. 2008-5 further provides:

> "The Planning Commission or the Planning Director, as the case may be, shall approve or conditionally approve an application for a use permit, variance, or Federal Exception Permit if, on the basis of the application, plans, materials, and testimony submitted, the Planning Commission or the Planning Director finds: . . .
> C. For Federal Exception Permits [A 'Federal Exception Permit' is the name of the permit and application process necessary to obtain a "reasonable accommodation" as that term is used in the Federal Fair Housing Act Amendments (FHAA) and the case law implementing the FHAA. The application for a Federal Exception Permit shall be approved unless there is substantial evidence in the administrative record that establishes that one or more of the findings for approval cannot be made. Federal Exception Permits are subject to the enforcement provision contained in Chapter 20.96.]
> 1. The Federal Exception Permit sought is handicapped-related.
> 2. The living group is not residing in the dwelling or dwellings as a single housekeeping unit.
> 3. The Federal Exception Permit, if approved, would not require a fundamental alteration in the nature of a municipal program nor impose an undue financial or administrative burden on the City. To the extent authorized by law, the factors the Planning Commission or the City Council on review or appeal may consider in deciding whether to grant a Federal Exception Permit include, but are not necessarily limited to:
> a. Whether the nature and/or extent of vehicular traffic, such as the frequency or duration of trips by commercial vehicles, would be altered to a such an extent that it would be contrary to, or violate, any relevant provision of the Newport Beach Municipal Code if the Federal Exception Permit was approved; or
> b. Whether development or use standards established in the Newport Beach Municipal Code and that are applicable to other residential uses in the neighborhood would be violated; or
> c. Whether a campus would be established in a residential zone if the Federal Exception Permit were granted." (Mun. Code, § 20.91.035.)

30.     The City should be knowledgeable about the State law requirements relating to

1  alcohol or drug abuse recovery or treatment centers.  Provisions in the City's Municipal Code

2  prior to the effective date of Ordinance No. 2008-5 that regulate Residential Care Facilities are

3  intended to implement State law.  The City is required to enforce these laws.  (*See, e.g., Sego v.*

4  *Santa Monica Rent Control Board* (1997) 57 Cal.App.4th 250 [upholding private landlords'

5  writ petition to compel city rent control board to comply with state law obligations].)

6       31.    The City is further aware that several Defendant Facility Operators have devised

7  schemes to circumvent these laws.  The City has the authority and responsibility under its

8  Charter to ensure that persons and entities operating within its jurisdictional boundaries comply

9  with all applicable laws.  (Charter, § 200.)  However, the City has willfully failed to take

10  appropriate and required actions to ensure that the Defendant Facility Operators stop

11  circumventing and violating these laws.

12       32.    The Defendant Facility Operators have circumvented, and continue to violate,

13  the State ADP-licensing requirements (and the Municipal Code Federal Exception Permit

14  requirement) by separating non-medical recovery, treatment, and/or detoxification services

15  from the residential living quarters.  The supervised services and living quarters are integral

16  components of the same facility and operation: (1) the persons residing in the residential living

17  quarters are required to participate in one or more of these services; (2) the facility operator

18  arranges for transportation between living quarters location and services location; and, (3)

19  elements of supervision, staffing, and control at both the services and living quarters locations

20  are the same.

21       33.    The Defendant Facility Operators have also circumvented, and continue to

22  violate, the State ADP-licensing requirements (and the Municipal Code Federal Exception

23  Permit requirement) by artificially creating a series of sub-facilities that each provide

24  supervised living quarters for six or fewer persons.  The sub-facilities are integral components

25  of the same facility and operation having greater than six persons.  For example, the sub-

26  facilities are: (1) located in the same facility, building, or group of buildings on the same or

27  nearby property; (2) persons residing in these sub-facilities attend the same non-medical

28  recovery, treatment, and/or detoxification services; or, (3) elements of supervision, staffing, and

-7-

1    control at the sub-facility locations are the same.

2        34.    By circumventing and violating State laws as alleged herein, Defendant Facility

3    Operators are also violating the zoning restrictions in City Municipal Code section 20.10.020,

4    and the Federal Exception Permit Requirement set forth in City Municipal Code sections

5    20.91.015, 20.91.020, and 20.91.035.

6        **City Over-Concentration of Residential Care Facilities and Statistics.**

7        35.    Numerous City residents that reside in the Impacted Areas have been, and

8    continue to be, negatively affected by the over-concentration of residential treatment facilities,

9    sober living, homes, boarding houses, and care facilities (collectively, "Residential Care

10   Facilities") in the Impacted Areas.

11       36.    The City has determined that several areas of the City, specifically, the Impacted

12   Areas, have an over-concentration of Residential Care Facilities that has changed the nature of

13   these neighborhoods from residential to institutional.  Also, according to the City, the City has a

14   disproportionate number of State licensed and unlicensed Residential Care Facilities compared

15   to its population. For example:

16       a.   The City has the highest number of State licensed and unlicensed Residential Care

17            Facilities in Orange County – 2.63 licensed alcohol and drug treatment beds per

18            1,000 residents (the average is 0.52).

19       b.   The City has over 14 percent of all licensed Residential Care Facility beds in the

20            County, when the City has less than 2.8 percent of the County's population.

21       c.   Approximately 29 percent of all new State licenses issued by ADP for licensed

22            Residential Care Facilities are in the City.

23       d.   Approximately 94 percent of all licenses are for Residential Care Facilities in the

24            Impacted Areas.  Over 100 licensed and unlicensed Residential Care Facilities are

25            located in the Impacted Areas.

26       e.   The City has deliberately allowed the rapid growth in the number of Residential

27            Care Facilities to go unchecked in the absence of appropriate regulations to

28            minimize impacts to the existing community.  In 2003, there were 5 State licensed

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1    Residential Care Facilities in the City.  In 2007, there were 24 State licensed

2    Residential Care Facilities, with 4 additional State license decisions pending.

3    37.    Despite the City's finding that the Impacted Areas are now institutional, the City

4    has refused to regulate Residential Care Facilities, improperly asserting that its ability to

5    regulate these uses is completely restricted by federal and State laws.

6    38.    The City's Municipal Code prior to the effective date of Ordinance No. 2008-5

7    allows license and unlicensed Residential Care Facilities for six or fewer persons in all

8    residential zones without a use permit.  (City Mun. Code, § 20.10.020.)

9    39.    The City's Municipal Code prior to the effective date of Ordinance No. 2008-5

10    requires a special Federal Exception Permit for Residential Care Facilities of 7 or more persons.

11    (City Mun. Code, § 20.10.020.)  However, the Defendant Facility Operators have never applied

12    for nor received the required Federal Exception Permit.  The City has never issued, and has

13    failed to require, the existing Residential Care Facilities for 7 or more persons to obtain a

14    Federal Exception Permit.  Therefore, these Residential Care Facilities were established

15    illegally, and continue to operate in violation of the City's Municipal Code.  Citizens has

16    repeatedly requested and demanded that the City enforce its laws.  The City knows that these

17    Residential Care Facilities are operating in violation of the Municipal Code, but has refused to

18    implement or otherwise enforce the law.

19    40.    The City has willfully refused to enforce any applicable Municipal Code

20    requirements as it relates to Residential Care Facilities.  For example, the City willfully failed

21    to enforce its use permit, and subsequently enacted Federal Exception Permit, requirements for

22    Residential Care Facilities, even though it was legally required to do so under its own

23    regulations. The City also provided certificates of occupancy to a number of Facility Operators

24    to operate Residential Care Facilities without the proper fire clearances.

25    **Adverse Impacts Attributed to City's Failure to Regulate Residential Care Facilities.**

26    41.    The City's failure to implement and enforce the Municipal Code requirements

27    regulating Residential Care Facilities prior to the effective date of Ordinance No. 2008-5 has

28    caused adverse impacts to the Citizens.  Residential Care Facilities have, and continue to be,

1   established and operated in violation of the City Municipal Code and State law. The City is

2   aware of this fact and has failed to take corrective action to protect the Citizens.

3       42.     The continued establishment, expansion and operation of Residential Care

4   Facilities in the City, specifically the Impacted Areas, threatens the public health, safety, and

5   welfare of the Citizens and residents of the Residential Care Facilities.

6       43.     Further, the over-concentration allowed by the City of Residential Care Facilities

7   has, and is continuing to, transform residential neighborhoods in the Impacted Areas into

8   institutionalized zones in violation of zoning laws.

9       44.     Citizens' members and residents of the Residential Care Facilities experience

10  significant adverse impacts as a result of the Facility Operators' activities and the City's failure

11  to effectively regulate Residential Care Facilities in the Impacted Areas. For example:

12          a.   Over-concentration. Over-concentration of Residential Care Facilities in the

13               Impacted Areas in the City has already transformed the character of the

14               residential neighborhood into an institutionalized zone. It is currently estimated

15               that over 100 licensed and un-licensed Residential Care Facilities exist in the

16               Impacted Areas, including alcoholism or drug abuse recovery or treatment

17               facilities and sober living facilities. In some parts of the Impacted Areas the

18               total number of beds in Residential Care Facilities, including "sober living

19               homes," is estimated to exceed 20 percent of the total population of the area.

20          b.   Refusal to Maintain Adequate Records. Despite the fact that Citizens has

21               requested that the City conduct an audit of all licensed and unlicensed

22               Residential Care Facilities in the City, the City has refused. Citizens has also

23               requested that the City monitor and manage this use, however, the City has not

24               maintained records on the number, size, and location of Residential Care

25               Facilities within its jurisdiction. Citizens have made a number of reports to the

26               Police Department and these reports have not been adequately maintained or

27               recorded. By refusing to maintain records, the City is unable to ensure that all

28               Residential Care Facilities are in compliance with all regulatory requirements,

1    including those in the City's Municipal Code and State laws.  The City's

2    treatment of these uses is not consistent with its policy and practice of managing

3    and monitoring other uses in the City, or the law.

4    c.    Incompatibility with Established Neighborhood Communities.  The over-

5    concentration of Residential Care Facilities in the Impacted Areas conflicts with

6    the purpose of traditional, established residential neighborhoods, including

7    permanence, stability, and linkages to the community as described in the General

8    Plan and City Zoning Ordinance.  (See, e.g., Mun. Code, § 20.10.010.)  The

9    Impacted Area is characterized by small lots with narrow setbacks, with

10   frequently less than five feet between buildings.  The close proximity between

11   buildings exacerbates the adverse impacts.  An increase in density caused by

12   institutionalization creates a significant impact to the existing residential

13   community.  Institutionalization also increases noise, exposure to second-hand

14   cigarette smoke, traffic, parking, littering, trash, loitering, drug-related activity,

15   and crime, including theft, vandalism and trespassing.  Established residential

16   communities in the Impacted Areas are particularly burdened.

17   d.    Concentration of Population with No Affiliation to Community.  The occupants

18   of the Residential Care Facilities do not permanently reside in the City and have

19   no ties to the community, thus eliminating the "sense of community" in the

20   Impacted Areas.  Many of the residents residing at the Residential Care Facilities

21   come to the City from all over the United States.

22   e.    Type of Housing Does Not Necessarily Accommodate the Use.  Residential Care

23   Facilities in the Impacted Areas promote dormitory style living that cannot be

24   accommodated by the design of the existing housing stock in the small coastal

25   communities in the Impacted Areas.

26   f.    Increased Traffic.  Over-concentration and institutionalization in the Impacted

27   Areas creates an increase in traffic as a result of the high numbers of occupants

28   of each Residential Care Facility, a higher demand for services generated by

-11-

768178.2

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1   those occupants, from staff and employees at the Residential Care Facilities, and

2   from visitors to the Facilities.  Citizens' members have also experienced an

3   increase in the frequency of emergency vehicles present at the Residential Care

4   Facilities in the Impacted Areas , including police cars, ambulances, and fire

5   trucks.  These emergency vehicle fleets, often consisting of at least 4 units at a

6   time, block traffic in the narrow streets and alleys in the Impacted Areas,

7   restricting residents' fire access.  The streets in the Impacted Areas cannot

8   accommodate the increased traffic demand created by the over-concentration of

9   Residential Care Facilities.

10      g.  Limited Parking.  With increased density and traffic, Residential Care Facilities

11      in the Impacted Areas strain already limited off-street and on-street parking

12      resources.  Parking is particularly overburdened by staff and employees of the

13      Residential Care Facilities, weekend visitors, vans and delivery vehicles, and

14      emergency fleet vehicles, especially on the narrow streets and in the alleys that

15      are defined in the Impacted Area.  The Impacted Areas cannot accommodate the

16      increase in parking demands created by the over-concentration of Residential

17      Care Facilities.

18      h.  Smoking.  Well-documented public health, safety and welfare issues are

19      associated with second-hand smoke.  Citizens' members have been subjected to

20      increased and continuous exposure to second-hand smoke as a result of the over-

21      concentration of Residential Care Facilities in the Impacted Areas.  Occupants of

22      the Residential Care Facilities often congregate and smoke cigarettes in front of

23      the Residential Care Facilities, on the beach, and on the streets and alleys in

24      large groups.  The impact is especially severe in the Impact Areas where the

25      buildings are located in close proximity to one another, often less than five feet.

26      As a result, Citizens' members are unable to open windows in their homes, or to

27      sit outside on their patios and balconies, without being forced to ingest the

28      second-hand smoke generated from the Residential Care Facilities.  The over-

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1    concentration of Residential Care Facilities is negatively affecting the Citizens'

2    enjoyment of their properties.  Further, public smoking is prohibited by the

3    City's Municipal Code.

4    i.    Littering. The over-concentration and institutionalization of Residential Care

5        Facilities in the Impacted Areas results in an excessive amount of litter and trash

6        in the Impacted Areas.  Citizens' members have experienced littering of ash,

7        spittle, and cigarette butts (lit and unlit) in the streets, alleys, and beaches in the

8        Impacted Areas, from the Residential Care Facilities.  Citizens' members have

9        also experienced a higher volume of trash, including wrappers, in the Impacted

10        Areas from Residential Care Facilities.

11    j.    Loitering.  The over-concentration of Residential Care Facilities in the Impacted

12        Areas results in an increase in the amount of loitering and noise outside

13        residential homes and in public right of ways (e.g., sidewalks, alleys, and beach

14        boardwalks) in the Impacted Areas.  This impact occurs because activities at the

15        Residential Care Facilities are moved outdoors because traditional residential

16        units are not designed for dormitory style living, and as a result of  Defendant

17        Facility Operators' method of operation.  The over-concentration of Residential

18        Care Facilities exacerbates the noise and loitering problems.  Citizens' members

19        have seen and heard occupants of Residential Care Facilities congregating in

20        large groups, loudly talking on cell phones outside of the Residential Care

21        Facilities at all hours of the day and night, incidents of yelling, and prominent

22        use of profanity and obscene language in the Impacted Areas.  These activities

23        have caused significant disturbance to Citizens' members' quiet enjoyment of

24        their properties and homes.

25    k.    Safety.  The over-concentration of Residential Care Facilities in the Impacted

26        Areas has increased the presence of parolees, probationers, and persons serving

27        alternative sentencing in the Impacted Areas, and has resulted in more parolees,

28        probationers, and persons serving alternative sentences in close proximity to

schools and child care facilities, creating a safety concern. Citizens' members have observed and experienced criminal activity caused by Residential Care Facility residents, including, but not limited to observing occupants of Residential Care Facilities engaging in vandalism, theft, trespassing, drug-related incidents, and drug dealing. Citizens' members homes have been burglarized, their bicycles have been stolen, and their homes have been vandalized by occupants of Residential Care Facilities. Occupants of Residential Care Facilities have trespassed onto Citizens' members private properties and into their homes, including breaking through gates, climbing over walls separating the buildings, and breaking and entering into homes.

l. <u>Medical Hazardous Waste</u>. There is an increase in the amount of medical hazardous waste being discarded in the Impacted Areas as a result of the over-concentration of Residential Care Facilities. For example, Citizens' members have seen Residential Care Facility staff and residents dispose of used urine drug kits, needles, and other medical hazardous waste in trash cans without proper prophylactic storage. This activity poses a significant health and safety risk to Citizens' members and the public.

m. <u>Deliveries</u>. There is a substantial increase in the number of commercial or other types of delivery trucks and vehicles in the Impacted Areas as a result of the over-concentration of Residential Care Facilities. There is also an increase in the number of trucks and vans transporting occupants of Residential Care Facilities to other Residential Care Facilities. The Impacted Areas cannot accommodate this increased delivery activity. This increased delivery activity also results in additional traffic, parking, and noise impacts.

45.    All of these negative impacts adversely affect Citizens' members and the residents of the Residential Care Facilities by transforming residential neighborhoods into institutional zones.

**<u>History of City's Regulation of Group Residential Facilities.</u>**

-14-

### Pre-2004 Regulations.

46.    Before 2004, the City's Municipal Code section 20.05.030 (Residential Use Classifications) included only a "Residential Care, Limited" use classification for Residential Care Facilities.  The "Residential Care, Limited" use was defined as "twenty-four hour non-medical care for six or fewer persons in need of personal services, supervision, protection, or assistance essential for sustaining the activities of daily living.  This classification includes those services and facilities licensed by the State of California."  The City only permitted as a use ADP-licensed Residential Care Facilities with six or fewer persons in the residential zones.

47.    Also, prior to 2004, the City's Municipal Code section 20.05.040 (Public and Semi-Public Use Classifications), subdivision (R), included a "Residential Care, General" use classification for Residential Care Facilities.  The "Residential Care, General" use was defined as "twenty-four hour non-medical care for seven or fewer persons, including wards of the juvenile court, in need of personal services, supervision, protection, or assistance essential for sustaining the activities of daily living.  This classification includes those services and facilities licensed by the State of California."  The City only allowed ADP-licensed Residential Care Facilities with 7 or more persons to exist in residential zones with a use permit.

48.    The City willfully failed to implement the use permit requirement for ADP-licensed Residential Care Facilities with 7 or more persons, despite numerous requests and repeated concerns posed by citizens.  As a result, Facility Operators were able to illegally establish large un-permitted Residential Care Facilities in the City, as well as numerous un-smaller un-permitted Residential Care Facilities that have been integrated with the larger Residential Care Facilities.

### 2003-2006 Amendments to Regulations.

49.    The Citizens are informed and believe, and on that basis allege, that on or about June 2003, then City Attorney, Mr. Robert Burnham with his wife, Kathleen Burnham, formed, funded and began operating a drug and alcohol rehabilitation service business known as the Drug Court Foundation of Orange County believed to be operating significantly in the City of Newport Beach.  It is further believed that the City Attorney conducted various activities in

-15-

1    support of the Drug Court Foundation from the City Hall offices during City business hours

2    between 2003 and 2005.

3         50.    During the same time period that the then City Attorney was developing this

4    drug and alcohol rehabilitation service, the then City Attorney was also charged with evaluating

5    and responding to concerns community members had expressed to the City about impacts of

6    Residential Care Facilities. The then City Attorney also provided guidance to the City Council

7    about amendment to the Zoning Ordinance; drafted the proposed amendments to the Zoning

8    Ordinance; and, used his position as City Attorney to convince the City and City Council to

9    adopt the Ordinance in the form he proposed.

10        51.    The then City Attorney's involvement with the Drug Court Foundation was not

11   publicly disclosed and the income he and his wife earned was not reported in any Statements of

12   Economic Interest or Form 700, that he was required to complete and maintain pursuant to the

13   requirements of the California Political Reform Act. Additionally, the City Attorney took

14   active measures to direct City staff not to enforce the Municipal Code concerning these uses,

15   and to intimidate staff members, as well as members of the community.

16        52.    Thus, in 2004, despite both substantial evidence of adverse impacts and

17   Citizens' public protest, the City knowingly changed its local ordinances to eliminate all

18   effective regulation of Residential Care Facilities. Under the direction of the then City

19   Attorney and then Mayor, under the guise of "non-discrimination," the City took affirmative

20   and deliberate action that enabled the rampant, uncontrolled expansion of Residential Care

21   Facilities in the Impacted Areas.

22        53.    On or about September 28, 2004, the City Council adopted Ordinance No. 2004-

23   16 on Group Living Uses.

24        54.    The City Planning Commission thereafter considered Code Amendment No.

25   2004-005 on Group Homes in Residential Zones (PA2004-102).

26        55.    On or about November 28, 2006, the City Council adopted Ordinance No. 2006-

27   25 on group residential facilities (Code Amendment No. 2006-005).

28        56.    The Municipal Code, as revised by the 2004 Ordinance, was crafted to

-16-                                                                          768178.2

specifically enable the expansion of the Residential Care Facilities and uses in the Impacted Areas. For example:

    a. Legal requirements for a use permit (CUP) were abolished;

    b. Licensed and unlicensed Residential Care Facility uses were permitted in residential zones R1.5 and R2;

    c. Definitions of "Residential Care-Limited" and "Residential Care, General" were revised to allow Facility Operators to commingle licensed and unlicensed uses, and to improperly characterize their operations as "six or under" subject to certain rights to which they were not legally entitled; and,

    d. The City failed to incorporate the State's definition of "facility" into ordinance definitions and allowed Facility Operators to operate without a business license in a manner inconsistent with the City's policy on business licenses for other businesses (including requiring business licenses for home based businesses).

57. City staff was also directed not to enforce the City's building or health and safety codes on Residential Care Facility uses. Thus, the City refused to manage Residential Care Facilities in the same manner in which it manages other businesses, including those conducted in residential zones.

58. By creating an environment of no regulation, the City deliberately created explicit conditions driving the rampant expansion of existing, and the entrance of new Facility Operators and Residential Care Facilities. The Defendant Facility Operators intentionally design their business model to exploit the City's "six and under" loophole, when the Facility Operators are actually operating the Residential Care Facilities as an integrated whole facility of more than six persons without the required governmental approvals.

59. The City's intentional removal of all regulation of Residential Care Facilities, combined with the well known unique characteristics of the Impacted Areas, has resulted in a serious over-concentration of Residential Care Facilities and associated negative impacts previously alleged herein.

60. The City has formally and publicly acknowledged that the Impacted Areas have

-17-

768178.2

1    been transformed into institutionalized zones in staff reports and documents submitted to the

2    State.  The intensity has caused well documented adverse impacts to Citizens and the Impacted

3    Areas.  These impacts include: increased noise, subjecting Citizens to continual secondhand

4    cigarette smoke, a known carcinogen; generation of significantly more trash discarded in the

5    Impacted Areas, including discarded hypodermic needles, urine drug kits, medical waste, and

6    cigarette butts; increased unmet parking demand; an increase in nuisance behavior; and,

7    overburdening of the existing infrastructure.

8        61.    The City willfully failed to enforce its use permit requirements, and

9    subsequently enacted Federal Exception Permit requirements, even though it was legally

10   required to do so under its own regulations.  As a result, a number of Facility Operators

11   established Residential Care Facilities within the City's Impacted Areas without ever having

12   obtained use review and approval as required by the City's Municipal Code.

13       62.    In addition, the City provided certificates of occupancy to a number of Facility

14   Operators to operate Residential Care Facilities without the proper fire clearances.  The City

15   was also grossly negligent, as it failed to establish a clear protocol to handle the Citizens'

16   complaints.

17                              **2007 Proposed Ordinance.**

18       63.    Citizens demanded that the City take appropriate action to rectify the over-

19   concentration problem it created in 2004.

20       64.    On or about February 13, 2007, the City initiated Residential Care Facility Code

21   Amendment No. 2007-10.

22       65.    On or about March 2007, the City sponsored a conference inviting jurisdictions

23   throughout the State.  The City was shown how other jurisdictions effectively and legally

24   regulate Residential Care Facilities uses.

25       66.    On or about March 12, 2007, Citizens sent a formal demand to the City and City

26   Council demanding a moratorium on the establishment and operation of new Residential Care

27   Facilities in the City.

28       67.    On or about April 24, 2007, the City Council adopted Ordinance No. 2007-8, an

1  interim urgency ordinance establishing a temporary 45 day moratorium ("Temporary

2  Moratorium") on the establishment and operation of new group residential uses that are

3  transitory in nature such as parolee-probationer homes, safe houses, unlicensed Residential

4  Care Facilities and Residential Care Facilities-General, in all residential zoning districts of the

5  City. The Temporary Moratorium expressly prohibited the establishment and operation, the

6  issuance of use permits, variances, other permits, business licenses, federal exception permits or

7  other applicable entitlements for the establishment or operation of new unlicensed Residential

8  Care Facilities and Residential Care Facilities-General.

9      68.    Citizens continued to demand that the City and City Council take affirmative

10  steps through a developing a revised ordinance and enforcement of its existing Municipal Code

11  to correct the health and safety problems caused by the over-concentration of Residential Care

12  Facilities. The City was unresponsive to Citizens and other community complaints about

13  enforcing the existing ordinance. The City deliberately obstructed efforts to craft an effective

14  revised ordinance, causing the need for the City and City Council to extend the Temporary

15  Moratorium. The City continued to improperly assert that there was little it could do to regulate

16  these uses and rectify over-concentration.

17      69.    On or about May 30, 2007, the City Council adopted Ordinance No. 2007-10, an

18  interim urgency ordinance extending for five months the Temporary Moratorium on the

19  establishment and operation of unlicensed Residential Care Facilities and Residential Care

20  Facilities-General, in all residential zoning districts of the City.

21      70.    On or about August 23, 2007, the Planning Commission held a public hearing on

22  the regulation of Residential Care Facilities and draft Ordinances. Citizens participated in this

23  hearing and demanded effective regulation of Residential Care Facilities to cure the problems

24  associated with over-concentration in the Impacted Areas.

25      71.    On or about September 20, 2007, the Planning Commission held a further public

26  hearing on the regulation of Residential Care Facilities. Again, Citizens participated in this

27  hearing and demanded effective regulation of Residential Care Facilities.

28      72.    Following the public hearing on September 20, 2007, the City Planning

-19-

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1   Commission forwarded its recommendation on the draft Ordinances to the City Council. The

2   Planning Commission recommended that the City Council adopt and Ordinance that would

3   include two key provisions proposed by Citizens: (1) a 1,000 foot dispersal requirement

4   between any two Residential Care Facilities in the Impacted Areas, regardless of whether the

5   Residential Care Facilities are permitted by right or with a use permit, or whether they are State

6   licensed ("1,000 Foot Dispersal Requirement"); and, (2) an "Overlay Zone" (*see* map attached

7   hereto as <u>Exhibit</u> "1") that would impose special requirements (including the 1,000 Foot

8   Dispersal Requirement) for Residential Care Facilities located within the Overlay Zone.

9        73.    On or about October 17, 2007, the City Council adopted Ordinance No. 2007-

10   116, an interim urgency ordinance extending for twelve months, until October 30, 2008, the

11   Temporary Moratorium on the establishment and operation of unlicensed Residential Care

12   Facilities and Residential Care Facilities-General, in all residential zoning districts of the City.

13        74.    On or about December 11 and December 18, 2007, the City Council held public

14   hearings to discuss the proposed new Group Residential Use Ordinance. Citizens participated

15   in these hearings and, again, demanded effective regulation of Residential Care Facilities to

16   cure the problems associated with over-concentration in the Impacted Areas.

17        75.    On or about January 8, 2008, the City Council voted to approve the proposed

18   ordinance regulating Group Residential Uses, Ordinance No. 2008-5. Citizens participated at

19   this hearing, and again demanded effective regulation of Residential Care Facilities.

20        76.    On or about January 22, 2008, the second reading of proposed Ordinance No.

21   2008-5 took place at the City Council hearing. Again, Citizens participated at this hearing and

22   demanded that the City effectively regulate Residential Care Facilities.

23        77.    Ordinance No. 2008-5 is scheduled to take effect on February 20, 2008.

24   **City Willfully Failed to Implement Necessary Regulations to Promote Health and Safety.**

25        78.    Key aspects of Ordinance No. 2008-5 include:

26       a.   Eliminates Federal Exception Permits from the Municipal Code.

27       b.   Defines "Integral Facilities" and "Integral Uses" and requires these uses, including

28          licensed and un-licensed Residential Care Facilities with 7 or more persons, to

1    obtain a use permit.

2    c.  Restricts the zones within the City in which new Residential Care Facilities may

3        be located.  Existing illegal Residential Care Facilities will become " legal non-

4        conforming uses" and will be required to obtain a use permit within 90 days of the

5        effective date of the Proposed Ordinance.

6    d.  Abatement of Residential Care Facilities that are prohibited or require a use

7        permit, and fail to obtain a use permit in a timely manner, within 1 year of the

8        effective date of Ordinance No. 2008-5, or the expiration date of the Operator's

9        lease to use the property (assuming lease entered into before December 7, 2007),

10       or the expiration date of the Facility Operator's State license, whichever is soonest.

11       Facility Operators are permitted to apply for an extension of the abatement period.

12   e.  Adds new Chapter 20.91A to the Municipal Code to address use permit process for

13       existing legal non-conforming group residential uses in residential zones.

14   f.  Repeal of the Temporary Moratorium on the establishment and operation of new

15       Residential Care Facilities in the City.

16       79.    The City's Ordinance No. 2008-5, however, excludes critical provisions that are

17   necessary to protect Citizens' health and safety and address over-concentration. For example:

18   a.  The City and City Council refused to establish a remedial plan to definitively

19       resolve over-concentration in the Impacted Areas by rejecting the 1,000 Foot

20       Dispersal Requirement and the Overlay Zone adopted by the Planning

21       Commission. (*See* Exhibit "1".)  These requirements would have attempted to

22       mitigate the severe health and safety problems that are currently prevalent in the

23       Impacted Areas where over-concentration of the Residential Care Facilities exists.

24   b.  The City and City Council refused to abate all illegal Residential Care Facilities

25       that are currently operating in the City.  Instead, the City and City Council will

26       allow the Facility Operators to obtain a use permit to continue operating.

27       80.    Citizens is informed and believes, and upon that basis alleges, that

28   Councilmember Steven Rosansky owns real property in the Impacted Area, and that the City's

768178.2

1    and City Council's reason for excluding from Ordinance No. 2008-5 the 1,000 Foot Dispersal

2    Requirement and the proposed Overlay Zone is to ensure that Councilmember Rosansky could

3    continue to vote on issues related to Residential Care Facilities, when he would otherwise be

4    required to recuse himself due to the conflict of interest regulations because he owns real

5    property within the Overlay Zone. This is an improper basis for refusing to regulate.

6        81.    Then Mayor Rosansky concealed from the public the fact that he had a financial

7    interest in property(s) that are, and have been, leased to Residential Care Facilities for

8    approximately 3 or 4 years; failed to disclosure this financial interest in his California Fair

9    Political Practices Commission Form 700 (Statement of Economic Interests); and, failed to

10   recuse himself from voting on matters related to regulation of Residential Care Facilities in the

11   Impacted Areas, in violation of the Political Reform Act.

12       82.    The City's and City Council's reasons for rejecting the Overlay Zone, 1,000

13   Foot Dispersal Requirement, specific standards with requirement to apply in the use permit and

14   reasonable accommodation processes, and the requirement to abate all illegal uses, are pre-

15   textual to the actual reasons, as alleged herein.

16   **City's Ordinance No. 2008-5 is Inconsistent with the General Plan and Zoning Ordinance.**

17       83.    The City's Ordinance No. 2008-5 is inconsistent with the City's General Plan

18   and other legal requirements to ensure that the Ordinance is consistent with the General Plan.

19       84.    The City's General Plan Land Use Element provides that the City has a managed

20   growth strategy focused on protecting and preserving the distinct residential character of its

21   neighborhoods. However, the City knowingly facilitated the rampant unchecked growth of

22   Residential Care Facilities, thereby creating over-concentration and institutionalized

23   environment in the Impacted Areas.

24       85.    The City's Ordinance No. 2008-5 violates the following General Plan Land Use

25   Goals: LU1.1, LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4,

26   LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2,

27   LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8.

28       86.    The City's Ordinance No. 2008-5 also violates section 20.10.010 of the City's

Municipal Code, which sets forth the specific purposes of residential zoning districts. For example, residential district regulations are intended to:

    a. Locate residential development in areas which are consistent with the General Plan and with standards of public health and safety established by the Municipal Code;

    b. Ensure adequate light, air, privacy, and open space for each dwelling, and protect residents from the harmful effects of excessive noise, population density, traffic congestion, and other adverse environmental effects;

    c. Protect residential areas from fires, explosions, landslides, toxic fumes and substances, and other public safety hazards; and,

    d. Protect adjoining single-family residential districts from excessive loss of sun, Multifamily Residential (MFR) District. Provides areas for single-family and two-family residential land uses. (Mun. Code, § 20.10.010, subd. (A)-(B), (D)-(E).)

**City Willfully Failed to Respond to and Properly Document Incidents Reported by Citizens.**

    87. On numerous occasions, the Citizens have reported to the City Police Department incidents of disturbance at Residential Care Facilities (and surrounding areas) in the Impacted Areas that are operated by the Defendant Facility Operators.

    88. Citizens are informed and believe, and on that basis allege, that the City directed the City Police Department to employ a procedure whereby it would not respond to the calls reporting disturbance and/or properly identify the reported disturbance and/or report the disturbance unless the City Manager authorized such action or actions be taken. For example, Citizens' members on numerous occasions have contacted the Police Department to report incidents of disturbance involving Residential Care Facilities. Citizens' members' subsequently reviewed the Police Department's on-line system and found that the reports were not logged as required. Further, Citizens' members have seen the Police Department responding to calls of disturbance for trespassing, burglary, potential overdoses, and other criminal activity involving Residential Care Facilities and their residents. Citizens' members observed in these cases that the Police Department failed to detain or process the suspects,

-23-

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1  allegedly to minimize documentation and downplay the high level of incidents related to

2  Residential Care Facilities.

3      89.    Citizens' members also reported to the City Fire Department specific new

4  Residential Care Facilities in the Impacted Areas believed to be in violation of the Uniform

5  Building Code and City Municipal because they were established without Fire Department

6  approval, and do not comply with occupancy requirements.  The Fire Department agreed with

7  Citizens that these Residential Care Facilities are in violation of the Uniform Building Code and

8  City Municipal Code, but took no action.  For example, Citizens' members  repeatedly

9  contacted several City departments, including the Fire Department, about an integrated

10  Residential Care Facility located on the corner of Clay and Orange Streets in the Impacted

11  Area, and the numerous suspected Building Code violations at this Facility.  The City failed to

12  inspect the Residential Care Facility for over a year.  The City later admitted that these Code

13  violations existed, but failed to cite the Defendant Facility Operator and refused to abate the

14  violations.  The City also requested that Citizens "forget" about the over two years of

15  complaints lodged by Citizens related to this Residential Care Facility. The City continues to

16  "monitor" the Residential Care Facility, but has still failed to take any corrective action.

17      90.    Citizens are also informed and believe, and on that basis allege, that the City

18  directed the City Fire Department not to issue citations or to otherwise take corrective action for

19  the alleged violations of the Uniform Building Code and City Municipal Code.

20      91.    The City's conduct and negligence constitutes interference with public services

21  relating to health and safety, and violates Citizens' right to the same.

22      **Citizens Has Exhausted its Administrative Remedies.**

23      92.    Citizens realleges and incorporates all prior paragraphs of this

24  Petition/Complaint, inclusive, as though set forth herein.

25      93.    Citizens has exhausted its administrative remedies in this case.  (*See Coalition*

26  *for Student Action v. City of Fullerton* (1984) 153 Cal.App.3d 1194 [exhaustion of

27  administrative remedies is a jurisdictional prerequisite to resort to the courts].)

28      94.    Citizens participated in the public hearing process when the City enacted the

-24-

768178.2

1   2004 revisions to the Residential Care Facilities Ordinance.

2       95.     Citizens has participated in all public hearings related to the Proposed Ordinance

3   in 2007 and 2008, demanding that the City and City Council adopt effective regulation of

4   Residential Care Facilities to address the negative health and safety impacts associated with

5   over-concentration of these facilities in the Impacted Areas, that would include, among other

6   things, the Overlay Zone, 1,000 Foot Dispersal Requirement, and the abatement of illegally

7   established and operated uses.

8       96.     Citizens has also met with the City on several occasions, submitted several

9   comment letters, including a formal Tort Claim Act Notice/demand letter dated October 9,

10  2007, to the City and City Council setting forth its position on the Proposed Ordinance, and the

11  allegations set forth herein.

12      97.     Citizens has spent significant time and expense to assist the City in developing

13  an ordinance that effectively regulates Residential Care Facilities in the City and Impacted

14  Areas to properly address the negative effects resulting from over-concentration. Citizens

15  relied on the City to draft an ordinance that protects the health, safety, and welfare of its

16  citizens. The City, however, has not responded to Citizens and its concerns in good faith, and

17  willfully failed to adopt the necessary laws to protect the public.

18      98.     Given the City and City Council's failure to respond to Citizens' initial Tort

19  Claim Act Notice/Demand letter, dated October 9, 2007, and other numerous prior requests for

20  relief, Citizens believes that any further demand on the City would be futile. As such, Citizens'

21  filing of the instant First Amended Complaint/Petition is timely.

22                          **FIRST CAUSE OF ACTION**

23  **(For a Writ under CCP § 1085  Directing the City and City Council to Enforce City**

24                  **Municipal Code and other Ministerial Duties –**

25  **Against Defendants and Respondents City and City Council and Does 1-300)**

26      99.     Citizens realleges and incorporates all prior paragraphs of this

27  Petition/Complaint, inclusive, as though set forth herein.

28      100.    This writ is necessary because Citizens has no adequate remedy at law.

768178.2

1      101.    The City has a ministerial duty and is required to enforce the City's Municipal

2    Code, Building and Safety Code, Fire Code, the Temporary Moratorium, and public nuisances.

3    The City also has a ministerial duty to not interfere with the Police Department's and Fire

4    Department's discharge of its public safety duties.

5      102.    Citizens has a right to require the City to perform its ministerial duties.

6      103.    Citizens requests that the Court issue a writ directing the City to:

7      a.  Enforce City Ordinance No. 2008-5 upon its effective date.

8      b.  Until City Ordinance No. 2008-5 is effective, enforce the existing law regulating

9           Residential Care Facilities.

10      c.  Immediately abate all illegal Residential Care Facilities.

11      d.  Immediately abate all Residential Care Facilities in the City that do not have valid

12           Federal Exception Permits.

13      e.  Require that Facility Operators obtain certificates of occupancy to ensure that

14           Residential Care Facilities operate with the proper fire clearances.

15      f.  Enforce the Temporary Moratorium and immediately abate all violations by the

16           Defendant Facility Operators, and any other violators.

17      g.  Abate all Residential Care Facilities in the City that were created illegally,

18           operating illegally, or are otherwise unpermitted.

19      h.  Abate all health and safety violations and public nuisances created by the over-

20           concentration of Residential Care Facilities, including smoking in prohibited areas,

21           trash and littering, loitering, noise and obscene language, theft, vandalism,

22           trespassing, increased traffic and lack of parking, and disposal of hazardous and

23           medical waste, including needles and used drug urine kits, and drug-dealing, and

24           drug-related incidents.

25      i.  Stop interference with the Police Department's and Fire Department's discharge of

26           their public safety duties, and make all reports of complaints and incidents of

27           public disturbances available to Citizens and the public upon request.

28      j.  Establish a clear protocol to handle Citizens' complaints that relate to Residential

1      Care Facilities and the adverse impacts.

2      k.   Revise the existing Municipal Code provisions governing Residential Care

3           Facilities and Ordinance No. 2008-5 so that the Zoning Ordinance is consistent

4           with the following General Plan Land Use Goals: LU1.1, LU1.2, LU1.3, LU1.4,

5           and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5, LU2.6, LU3.1,

6           LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2, LU5.1.3,

7           LU5.1.4, LU5.1.7, and LU5.1.8, as required by Government Code section 65860.

8      l.   Revise the existing Municipal Code provisions governing Residential Care

9           Facilities and Ordinance No. 2008-5 so that the Zoning Ordinance is consistent

10          with section 20.10.010 of the City's Municipal Code, which sets forth the specific

11          purposes of residential zoning districts.

12     104.   The City Council abused its discretion and acted arbitrarily, capriciously and

13     without due regard for Citizens' rights when it refused to adopt the Planning Commission's

14     recommendations regarding:

15     a.   Applying an Overlay Zone in the Impacted Areas (*see* Exhibit "1").

16     b.   Requiring all new and existing Residential Care Facilities in the Impacted Areas to

17          be subject to the 1,000 Foot Dispersal Requirement.

18     105.   The City Council rejected the Planning Commission's recommendation in this

19     regard so that Councilmember (and former Mayor) Rosansky could vote on Ordinance No.

20     2008-5 regulating Residential Care Facilities.  The City Council's improper rejection of the

21     most effective means of addressing over-concentration of Residential Care Facilities in the

22     Impacted Areas causes Citizens harm and prejudice.

23                          **SECOND CAUSE OF ACTION**

24     **(For Declaratory Relief – Against All Respondents and Defendants and Does 1-300)**

25     106.   Citizens realleges and incorporates all prior paragraphs of this

26     Petition/Complaint, inclusive, as though set forth herein.

27     107.   The controversies alleged herein give rise to the need for a judicial determination

28     of rights, for which Citizens seeks a judicial determination of the following, on behalf of

-27-                                          768178.2

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

Citizens and its members:

    a.  The City has already determined that there is over-concentration of Residential Care Facilities in the Impacted Areas. Thus, Citizens requests a declaration from this Court that the City has the right to eliminate the over-concentration of Residential Care Facilities in the Impacted Areas by imposing a 1,000 Foot Dispersal Requirement.

    b.  Citizens requests a declaration by this Court the Residential Care Facilities in separate buildings or dwelling units, but operated together, form an integrated use and are subject to the applicable Federal, State, and local regulations for large facilities.

    c.  The City has a ministerial duty and is required to enforce the City's Municipal Code, Building and Safety Code, Fire Code, the Temporary Moratorium, and to abate public nuisances. The City also has a ministerial duty to not interfere with the Police Department's and Fire Department's discharge of their public safety duties in the City.

    d.  Citizens has a right to require the City to perform its ministerial duties.

    e.  The City has a duty to enforce Ordinance No. 2008-5 upon its effective date.

    f.  The City has a duty, until Ordinance No. 2008-5 is effective, to enforce the existing law regulating Residential Care Facilities.

    g.  The City has a duty to immediately abate all illegal Residential Care Facilities.

    h.  The City has a duty to immediately abate all Residential Care Facilities in the City that do not have valid Federal Exception Permits.

    i.  The City has a duty to require that Facility Operators obtain certificates of occupancy to ensure that Residential Care Facilities operate with the proper fire clearances.

    j.  The City has a duty to enforce the Temporary Moratorium and immediately abate all violations by the Defendant Facility Operators, and any other violators.

    k.  The City has a duty to abate all Residential Care Facilities in the City that were

768178.2

created illegally, operating illegally, or are otherwise unpermitted.

l.  The City has a duty to abate all health and safety violations and public nuisances created by the over-concentration of Residential Care Facilities, including increased smoking in prohibited areas, trash and littering, loitering, theft, vandalism, trespassing, noise and obscene language, increased traffic and lack of parking, disposal of hazardous waste, including needles and urine drug kits, drug-dealing, and, drug-related incidents.

m.  The City has a duty to stop interference with the Police Department's and Fire Department's discharge of their public safety duties, and make all reports of incidents of public disturbances available to Citizens and other members of the public upon request.

n.  The City has a duty to establish a clear protocol to handle Citizens' complaints that relate to Residential Care Facilities and the adverse impacts.

o.  The City has a duty to revise the existing Municipal Code provisions governing Residential Care Facilities and Ordinance No. 2008-5 so that the Zoning Ordinance is consistent with the following General Plan Land Use Goals: LU1.1, LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2, LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8, as required by Government Code section 65860.

p.  The City has a duty to revise the existing Municipal Code provisions governing Residential Care Facilities and Ordinance No. 2008-5 so that the Zoning Ordinance is consistent with section 20.10.010 of the City's Municipal Code, which sets forth the specific purposes of residential zoning districts.

q.  The City has a duty to regulate Residential Care Facilities to reduce over-concentration and the resulting negative impacts.

r.  The City Council abused its discretion and acted arbitrarily, capriciously and without due regard for Citizens' rights when it refused to adopt the Planning

-29-

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1    Commission's recommendations regarding: (1) Applying an Overlay Zone in the

2    Impacted Areas (*see* Exhibit "1"); and, (2) Requiring all new and existing

3    Residential Care Facilities in the Impacted Areas to be subject to the 1,000 Foot

4    Dispersal Requirement.

5        s.   The City Council improperly rejected the Planning Commission's

6            recommendation in this regard so that Councilmember (and former Mayor)

7            Rosansky could vote on the Proposed Ordinance regulating Residential Care

8            Facilities.

9        t.   The City Council's improper rejection of the most effective means of addressing

10           over-concentration of Residential Care Facilities in the Impacted Areas causes

11           Citizens harm and prejudice.

12      108.   Citizens has no adequate or speedy remedy at law, other than that herein prayed,

13   by which the rights of Citizens may be determined.

14   ### THIRD CAUSE OF ACTION

15   **(Damages for Deprivation of Civil Rights Under 42 U.S.C. § 1983 –**

16   **Against Respondents and Defendants City and City Council and Does 1-300)**

17      109.   Citizens realleges and incorporates all prior paragraphs of this

18   Petition/Complaint, inclusive, as though set forth herein.

19      110.   The City and City Council, acting under the color of State law, violated Citizens'

20   Civil Rights under the United States and California Constitutions, and 42 U.S.C. section 1983

21   by depriving Citizens certain federal Constitutional protections alleged herein, any one of

22   which is sufficient to claim a violation of Citizens' civil rights. (*Barquis v. Merchants*

23   *Collection Ass'n* (1972) 7 Cal.3d 94, 103 [a complaint is sufficient if it alleges facts which state

24   a cause of action under any possible legal theory].)

25      111.   The City and City Council violated Citizens' substantive due process rights

26   guaranteed by the Fourteenth Amendment. The City's affirmative acts, specifically adoption of

27   the 2004 Ordinance and failure to include in the Proposed Ordinance the Overlay Zone, 1,000

28   Foot Dispersal Requirement, and an abatement requirement for all illegal uses, has created a

1   perilous situation that renders Citizens more vulnerable to the dangers alleged herein at the

2   hands of Defendant Facility Operators.  (*See Kallstrom v. City of Columbus* (6th Cir. 1998) 136

3   F.3d 1055, 1066 [government "may not cause or greatly increase the risk of harm to its citizens

4   without due process of law through its own affirmative acts"].)

5        112.    The City's and City Council's acts have caused special risk to the Citizens living

6   in the Impact Areas that are not experienced by the public at large.  The City and City Council

7   knew that its actions caused serious dangers to health and public safety, and had sufficient time,

8   at least 4 years, to take the appropriate actions – but did nothing. (*See Bukowski v. City of Akron*

9   (6th Cir. 2003) 326 F.3d 702, 710 [discussing the "deliberate indifference" standard].)

10       113.    The City and City Council violated Citizens' right to procedural due process by

11  refusing to adopt the Overlay Zone and 1,000 Foot Dispersal Requirement because it would

12  impact then-Mayor Rosansky's ability to vote because he owns real property in the proposed

13  Overlay Zone, and continuing to vote would constitute a conflict of interest.  Such conduct

14  violates Citizens' procedural due process right to un-biased decision-makers.

15       114.    The City and City Council failed to address over-concentration of Residential

16  Care Facilities, enforce conflicts of interest regulations, report potential violations of the

17  California Political Reform Act, and to adopt the Overlay Zone and 1,000 Foot Dispersal

18  Requirement so that then-Mayor Rosansky could continue to vote.

19       115.    The City improperly employed a procedure whereby the Police Department does

20  not respond to calls from the Citizens and the community reporting disturbances at or near the

21  Residential Care Facilities, and/or properly identify the reported disturbances, and/or report the

22  disturbances unless the City Manager has authorized such action or actions be taken.

23       116.    The City also improperly directed the Fire Department not to issue citations or to

24  otherwise take corrective action with respect to Residential Care Facilities that it knows are in

25  violation of the Uniform Building Code and City Municipal Code.

26       117.    The City's conduct constitutes interference with pubic services relating to health

27  and safety, and violates Citizens' constitutional right to the same.  The City has also retaliated

28  against Citizens for demanding proper reporting and response to calls for disturbance.

768178.2

118.   The City has allowed the establishment of Residential Care Facilities that violate the law, and has refused to enforce its laws and abate illegal uses that are creating over-concentration and the resulting negative impacts to Citizens.

119.   The right to be free from local government's deliberate disregard of the State's fundamental processes are protected by substantive due process rights, that were clearly established law at the time of the City's and City Council's actions. (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1034-36 [plaintiff has a valid substantive due process claim if the injury is due to the defendants' deliberate disregard of the state's fundamental process; the "flouting of the law" standard]; *see also Galland* Court's approval of *Mission Springs, Inc. v. City of Spokane* (1998) 134 Wash.2d 947, 970 [City actions contrary to applicable ordinances amount to flouting of the law].)

120.   The City and City Council deliberately violated and cavalierly disregarded Constitutional protections by violating California and Federal Constitutional laws.

121.   The City and City Council also deliberately violated and cavalierly disregarded the State and local fundamental due process when they failed to enforce the City's Municipal Code, adopted the 2004 Ordinance, and failed to include in the Proposed Ordinance an Overlay Zone, 1,000 Foot Dispersal Requirement, and an abatement requirement for all illegal uses, all of which has resulted in the over-concentration of Residential Care Facilities in the Impacted Areas and  created a perilous situation that renders Citizens more vulnerable to the dangers alleged herein at the hands of Defendant Facility Operators.

122.   Citizens is informed and believes, and on such information alleges that the City's and City Council's conduct as alleged herein constitutes an egregious, arbitrary, irrational, and capricious abuse of due process.

123.   The City's and City Council's flouting of due process requirements did not substantially advance any legitimate state interest and is not substantially nor reasonably related to the public health, safety, or general welfare.  Nor could such action substantially advance any legitimate state interest.  The City's and City Council's egregious conduct in flouting the well established laws caused Citizens damages.

-32-

768178.2

124.    Citizens is entitled to due process rights guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 1, section 7 of the California Constitution, and this fact was clearly established law at the time of the City's and City Council's actions. Procedural Due Process requires that a person shall not be deprived of life, liberty, or property without due process of law.

125.    The City's and City Council's actions were tainted with fundamental procedural irregularity and were arbitrary or capricious. (*Scott v. Greenville County* (4th Cir. 1983) 716 F.2d 1409, 1419 [finding these types of irregularities can be the basis for a procedural due process claim].)

126.    Procedural due process also includes the right to an unbiased decision-maker. (*Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1091.)  Hearings must be held by disinterested, unbiased decision makers.  (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1172-73.)  The City and City Council violated this right by refusing to adopt the Overlay Zone and 1,000 Foot Dispersal Requirement because it would impact then-Mayor Rosansky's ability to vote on issues impacting Residential Care Facilities in the Impacted Areas.

127.    This grave unfairness impermissibly tainted Citizens' due process right to have its concerns equitably considered.  (*Stivers v. Pierce* (9th Cir. 1995) 71 F.3d 732, 747-48 [holding that where one member of a tribunal is actually biased or where circumstances create the appearance that one member is biased then the proceedings violate due process].)  The City and City Council's refusal to consider Citizens' concerns by refusing to adopt the Overlay Zone and 1,000 Foot Dispersal Requirement because it would impact then-Mayor Rosansky's ability to vote on issues impacting Residential Care Facilities in the Impacted Areas, is improper.

128.    The City's and City Council's conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  (*Charfauros v. Board of Elections* (2001) 249 F.3d 941, 951-52.)

129.    It is objectively reasonable that the City and City Council, as well as City staff, would know that their actions violated Citizens' constitutional civil rights.  Additionally, they

-33-

1    were repeatedly put on notice by Citizens' numerous comments during public hearings, and

2    written correspondence to the City, that their actions violated Citizens' procedural and due

3    process rights.

### FOURTH CAUSE OF ACTION

**(For Negligence For Failure to Discharge Mandatory Duty – Against Respondents**

**and Defendants City and City Council and Does 1-300)**

7        130.    Citizens realleges and incorporates all prior paragraphs of this

8    Petition/Complaint, inclusive, as though set forth herein.

9        131.    Where a public entity is under a mandatory duty imposed by an enactment

10    designed to protect against the risk of particular kind of injury, the entity is liable for an injury

11    of that kind proximately caused by its failure to discharge the duty.  (Gov. Code, § 815.6;

12    *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499-500 [Section 815.6 creates a private

13    right of action against a government entity for its negligent failure to discharge the duty].)

14        132.    The City and City Council has a duty to enforce its Municipal Code and to

15    protect the health, safety, and welfare of its citizenry.

16        133.    The City and City Council violated this duty by failing to enforce State law, its

17    Municipal Code and Temporary Moratorium, and its failure to abate illegal uses and public

18    nuisances, as alleged herein, and failing to enact effective regulations to protect the health,

19    safety, and welfare of Citizens by addressing the negative impacts associated with the over-

20    concentration of Residential Care Facilities in the Impacted Areas.

21        134.    Citizens has been harmed as a result of the City's and City Council's failure to

22    enforce State law, its Municipal Code, and Temporary Moratorium, and its failure to enact

23    effective regulations to address the negative impacts associated with the over-concentration of

24    Residential Care Facilities in the Impacted Areas, including but not limited to, continued

25    increased exposure to second-hand smoke, littering, loitering, traffic, limited parking,

26    hazardous waste, including needles and used drug kits, noise and obscene language, theft,

27    vandalism, trespassing, drug-dealing, drug-related incidents, and other safety risks.

28        135.    The City's and City Council's failure to enforce its duty was a substantial factor

1    and/or the driving factor in causing Citizens' harm, as alleged herein.

2    **FIFTH CAUSE OF ACTION**

3    **(For Unfair Business Practices in Violation of Cal. Bus. & Prof. Code, § 17200 –**

4    **Against Defendant Facility Operators and Does 1-300)**

5    136.    Citizens realleges and incorporates all prior paragraphs of this

6    Petition/Complaint, inclusive, as though set forth herein.

7    137.    Beginning at an exact date unknown to Citizens, but at least since 2004, the

8    Defendant Facility Operators violated California Business and Professions Code section 17200

9    et seq. ("Section 17200").

10    138.    Defendant Facility Operators' acts and practices, as alleged herein, violate

11    Section 17200, as follows:

12        a.    The Defendant Facility Operators established and operated (and continue to

13            operate) Residential Care Facilities in violation of the City's Municipal Code, the

14            City's Temporary Moratorium, and State laws, as alleged herein.

15        b.    The Defendant Facility Operators have circumvented, and continue to violate, the

16            State ADP-licensing requirements (and the Municipal Code Federal Exception

17            Permit requirement) by separating non-medical recovery, treatment, and/or

18            detoxification services from the residential living quarters.  The supervised

19            services and living quarters are integral components of the same facility and

20            operation: (1) the persons residing in the residential living quarters are required to

21            participate in one or more of these services; (2) the facility operator arranges for

22            transportation between living quarters location and services location; and, (3)

23            elements of supervision, staffing, and control at both the services and living

24            quarters locations are the same.

25        c.    The Defendant Facility Operators have also circumvented, and continue to

26            violate, the State ADP-licensing requirements (and the Municipal Code Federal

27            Exception Permit requirement) by artificially creating a series of sub-facilities that

28            each provide supervised living quarters for six or fewer persons.  The sub-

facilities are integral components of the same facility and operation having greater than six persons.  For example, the sub-facilities are: (1) located in the same facility, building, or group of buildings on the same or nearby property; (2) persons residing in these sub-facilities attend the same non-medical recovery, treatment, and/or detoxification services; or, (3) elements of supervision, staffing, and control at the sub-facility locations are the same.

    d.  By circumventing and continuing to violate State laws as alleged herein, Defendant Facility Operators are also circumventing and violating the zoning restrictions in City Municipal Code section 20.10.020, and the Federal Exception Permit Requirement set forth in City Municipal Code sections 20.91.015, 20.91.020, and 20.91.035.

139.    The Defendant Facility Operators' conduct qualifies as unlawful, unfair, and/or fraudulent business acts or practices within the meaning of Section 17200.

140.    The unlawful, unfair and fraudulent business practices of the Defendant Facility Operators, as described above, has caused harm to Citizens, and, as such, Citizens is entitled to all remedies, as determined by the Court under Business and Professions section 17203.

141.    Such remedies include damages for the diminution of the Citizens' property values and lack of marketability of their properties, in an amount to be established in excess of $250 million.

142.    Citizens has demanded that the City take action against the Defendant Facility Operators from continuing to operate in violation of State and City laws.  The City refuses to do so, even though it has admitted that the Defendant Facility Operators are operating many Residential Care Facilities illegally.

## SIXTH CAUSE OF ACTION

### (For Public Nuisance – Against Defendant Facility Operators and Does 1-300)

143.    Citizens realleges and incorporates all prior paragraphs of this Petition/Complaint, inclusive, as though set forth herein.

144.    A public nuisance is one which affects at the same time an entire community or

-36-

768178.2

1   neighborhood, or any considerable number of persons, although the extent of the annoyance or

2   damage inflicted upon individuals may be unequal.  (Civ. Code, § 3480.)

3        145.   A public nuisance is any act or omission which interferes with the interests of

4   the community or the comfort and convenience of the general public and includes interference

5   with the public health, comfort, and convenience. (*See generally Venuto v. Owens-Corning*

6   *Fiberglas Corp.* (1971) 22 Cal.App.3d 116.)

7        146.   The necessary elements for proof of a cause of action for public nuisance include

8   the existence of a duty and causation, and, although it is not necessary to show that harm

9   actually occurred, plaintiffs must show that a defendant's acts are likely to cause a significant

10  invasion of a public rights. (*In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988.)

11       147.   Defendant Facility Operators are responsible for compliance with the City's

12  Municipal Code, including "the obligation not to maintain, permit, cause, or create a public

13  nuisance . . . ." (Mun. Code, § 10.50.030.)  Defendant Facility Operators' lack of oversight of

14  their businesses has prevented Citizens and other surrounding property owners from the full

15  enjoyment of their properties.  (*See Armory Park Neighborhood Association v. Episcopal*

16  *Community Services in Arizona* (1985) 712 P.2d 914 [injunction for public nuisance issued;

17  center operator had derivative responsibility for the acts of clients; praiseworthy nature of its

18  activity was not sufficient to make the harms, including littering and noise, reasonable].)

19       148.   Every violation of the City's Municipal Code by Defendant Facility Operators is

20  a public nuisance. (Mun. Code, § 10.50.020, subd. (I).)

21       149.   Also, all conduct by Defendant Facility Operators that is "[r]epetitive, boisterous

22  or unruly conduct by the owner or occupants of the property that occurs on the property when

23  that conduct: (1) is offensive to a person of ordinary sensibility; (2) continues after a written or

24  oral request to terminate the conduct; (3) is offensive to a considerable number of people; and,

25  (4) in the opinion of the Enforcement Officer, results in any of the impacts described in Section

26  10.50.010 of this chapter, is a public nuisance. (Mun. Code, § 10.50.020, subd. (K).)

27       150.   Defendant Facility Operators has created a condition that is harmful to the

28  Citizens' health, indecent and offensive to the Citizens' senses, and is an obstruction to the

1  Citizens' free use of their property, so as to interfere with the comfortable enjoyment of life or

2  property. Residential Care Facilities pose a clear and present danger to the public health, safety

3  and welfare, including that of Citizens, employees and patrons of the subject premises and to

4  residents and visitors to the properties and the surrounding neighborhood. Specifically:

5      a.   <u>Illegal Operations</u>. The Defendant Facility Operators opened and continue to

6          operate Residential Care Facilities that violate State and local laws.

7      b.   <u>Smoking</u>. Well-documented public health, safety and welfare issues are

8          associated with second-hand smoke. Citizens' members have been subjected to

9          increased and continuous exposure to second-hand smoke as a result of the over-

10         concentration of Residential Care Facilities in the Impacted Areas. Occupants of

11         the Residential Care Facilities often congregate and smoke cigarettes in front of

12         the Residential Care Facilities, on the beach, and on the streets and alleys in

13         large groups. The impact is especially severe in the Impact Areas where the

14         buildings are located in close proximity to one another, often less than five feet.

15         As a result, Citizens' members are unable to open windows in their homes, or to

16         sit outside on their patios and balconies, without being forced to ingest the

17         second-hand smoke generated from the Residential Care Facilities. The over-

18         concentration of Residential Care Facilities is negatively affecting the Citizens'

19         enjoyment of their properties. Further, public smoking is prohibited by the

20         City's Municipal Code.

21     c.   <u>Littering</u>. The over-concentration and institutionalization of Residential Care

22         Facilities in the Impacted Areas results in an excessive amount of litter and trash

23         in the Impacted Areas. Citizens' members have experienced littering of ash,

24         spittle, and cigarette butts (lit and unlit) in the streets, alleys, and beaches in the

25         Impacted Areas, from the Residential Care Facilities. Citizens' members have

26         also experienced a higher volume of trash, including wrappers, in the Impacted

27         Areas from Residential Care Facilities.

28     d.   <u>Loitering</u>. The over-concentration of Residential Care Facilities in the Impacted

-38-

768178.2

1    Areas results in an increase in the amount of loitering and noise outside

2    residential homes and in public right of ways (*e.g.*, sidewalks, alleys, and beach

3    boardwalks) in the Impacted Areas. This impact occurs because activities at the

4    Residential Care Facilities are moved outdoors because traditional residential

5    units are not designed for dormitory style living, and as a result of Defendant

6    Facility Operators' method of operation. The over-concentration of Residential

7    Care Facilities exacerbates the noise and loitering problems. Citizens' members

8    have seen and heard occupants of Residential Care Facilities congregating in

9    large groups, loudly talking on cell phones outside of the Residential Care

10    Facilities at all hours of the day and night, incidents of yelling, and prominent

11    use of profanity and obscene language in the Impacted Areas. These activities

12    have caused significant disturbance to Citizens' members' quiet enjoyment of

13    their properties and homes.

14    e.    Safety. The over-concentration of Residential Care Facilities in the Impacted

15    Areas has increased the presence of parolees, probationers, and persons serving

16    alternative sentencing in the Impacted Areas, and has resulted in more parolees,

17    probationers, and persons serving alternative sentences in close proximity to

18    schools and child care facilities, creating a safety concern. Citizens' members

19    have observed and experienced criminal activity caused by Residential Care

20    Facility residents, including, but not limited to observing occupants of

21    Residential Care Facilities engaging in vandalism, theft, trespassing, drug-

22    related incidents, and drug dealing. Citizens' members homes have been

23    burglarized, their bicycles have been stolen, and their homes have been

24    vandalized by occupants of Residential Care Facilities. Occupants of

25    Residential Care Facilities have trespassed onto Citizens' members private

26    properties and into their homes, including breaking through gates, climbing over

27    walls separating the buildings, and breaking and entering into homes.

28    f.    Medical Hazardous Waste. There is an increase in the amount of medical

-39-

768178.2

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1       hazardous waste being discarded in the Impacted Areas as a result of the over-

2       concentration of Residential Care Facilities.  For example, Citizens' members

3       have seen Residential Care Facility staff and residents dispose of used urine drug

4       kits, needles, and other medical hazardous waste in trash cans without proper

5       prophylactic storage.  This activity poses a significant health and safety risk to

6       Citizens' members and the public.

7           g.   Increased Traffic.   Over-concentration and institutionalization in the Impacted

8       Areas creates an increase in traffic as a result of the high numbers of occupants

9       of each Residential Care Facility, a higher demand for services generated by

10      those occupants, from staff and employees at the Residential Care Facilities, and

11      from visitors to the Facilities.  Citizens' members have also experienced an

12      increase in the frequency of emergency vehicles present at the Residential Care

13      Facilities in the Impacted Areas , including police cars, ambulances, and fire

14      trucks.  These emergency vehicle fleets, often consisting of at least four units at

15      a time, block traffic in the narrow streets and alleys in the Impacted Areas,

16      restricting residents' fire access.  The streets in the Impacted Areas cannot

17      accommodate the increased traffic demand created by the over-concentration of

18      Residential Care Facilities.

19         h.   Limited Parking.  With increased density and traffic, Residential Care Facilities

20      in the Impacted Areas strain already limited off-street and on-street parking

21      resources.  Parking is particularly overburdened by staff and employees of the

22      Residential Care Facilities, weekend visitors, vans and delivery vehicles, and

23      emergency fleet vehicles, especially on the narrow streets and in the alleys that

24      are defined in the Impacted Area.  The Impacted Areas cannot accommodate the

25      increase in parking demands created by the over-concentration of Residential

26      Care Facilities.

27

28         i.   Deliveries.  There is a substantial increase in the number of commercial or other

768178.2

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1    types of delivery trucks and vehicles in the Impacted Areas as a result of the

2    over-concentration of Residential Care Facilities.  There is also an increase in

3    the number of trucks and vans transporting occupants of Residential Care

4    Facilities to other Residential Care Facilities.  The Impacted Areas cannot

5    accommodate this increased delivery activity.  This increased delivery activity

6    also results in additional traffic, parking, and noise impacts.

7         151.   The conditions created by Defendant Facility Operators affects a substantial

8    number of people, including Citizens, in the Impacted Areas and the City.

9         152.   An ordinary person would be reasonably annoyed or disturbed by the conditions.

10        153.   The seriousness of the harm outweighs the social utility of Defendant Facility

11   Operators' conduct.

12        154.   Citizens did not consent to the Defendant Facility Operators' conduct.

13        155.   Citizens has suffered, and continues to suffer, harm that is different from the

14   type of harm suffered by the general public.

15        156.   Defendant Facility Operators' conduct was a substantial factor in causing

16   Citizens' harm.

17        157.   Citizens' remedies include damages for the diminution of Citizens' members'

18   property values and lack of marketability of such properties, in an amount to be established in

19   excess of $250 million.

20        158.   Citizens' remedies also include a permanent injunction preventing Defendant

21   Facility Operators from operating in a manner that creates a public nuisance, and for abatement.

22   **DAMAGES AND ATTORNEYS FEES**

23        159.   As a direct and proximate result of the City's and City Council's actions and

24   inactions, Citizens has employed the law firm of Jackson, DeMarco, Tidus, Petersen &

25   Peckenpaugh to enforce its rights threatened by the conduct of the City and City Council, as

26   alleged herein.  As such, Citizens is entitled to reimbursement of expenses and attorneys' fees

27   reasonably incurred in this matter pursuant to Code of Civil Procedures sections 1021.5 and

28   1036, Government Code section 800, and 42 U.S.C. section 1988, and to damages estimated to

1    be in excess of $250 million.

2        160.    This action will result in the enforcement of an important right affecting the

3    public interest, that being the City's and City Council's enforcement of the City Municipal

4    Code and Temporary Moratorium, among other rights alleged herein.

5        161.    The City's and City Council's conduct in failing to perform duties set forth

6    herein is arbitrary and capricious.

7        162.    The City's and City Council's knowing violation of Citizens' constitutionally

8    guaranteed civil rights alleged herein evidenced reckless and callous indifference to such rights.

9                              **PRAYER FOR RELIEF**

10    **WHEREFORE**, Petitioner and Plaintiff Citizens prays for judgment, as follows:

11        163.    A writ directing the City and the City Council to:

12        a.   Enforce the City's Ordinance No. 2008-5 upon its effective date.

13        b.   Until the City's Ordinance No. 2008-5 is enacted, enforce the existing law

14             regulating Residential Care Facilities.

15        c.   Immediately abate all illegal Residential Care Facilities.

16        d.   Immediately abate all Residential Care Facilities in the City that do not have valid

17             Federal Exception Permits.

18        e.   Require that Facility Operators obtain certificates of occupancy to ensure that

19             Residential Care Facilities operate with the proper fire clearances.

20        f.   Enforce the Temporary Moratorium and immediately abate all violations by the

21             Defendant Facility Operators, and any other violators;

22        g.   Abate all Residential Care Facilities in the City that were created illegally,

23             operating illegally, or are otherwise unpermitted;

24        h.   Abate all health and safety violations and public nuisances created by the over-

25             concentration of Residential Care Facilities, including smoking, especially in

26             prohibited areas, trash and littering, theft, vandalism, trespassing, loitering, noise

27             and obscene language, disposal of hazardous waste, including needles and

28             medical waste; drug-dealing, and, drug-related activity;

-42-

768178.2

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

i. Stop interference with the Police Department's and Fire Department's discharge of their public safety duties, and make all reports of complaints and incidents of public disturbances available to Citizens and the public upon request.

j. Establish a clear protocol to handle Citizens' complaints that relate to Residential Care Facilities and the adverse impacts.

k. Revise the existing Municipal Code provisions governing Residential Care Facilities and Ordinance No. 2008-5 so that the Zoning Ordinance is consistent with the following General Plan Land Use Goals: LU1.1, LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4, LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1, LU5.1.2, LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8, as required by Government Code section 65860.

l. Revise the existing Municipal Code provisions governing Residential Care Facilities and Ordinance No. 2008-5 so that the Zoning Ordinance is consistent with section 20.10.010 of the City's Municipal Code, which sets forth the specific purposes of residential zoning districts.

m. Apply an Overlay Zone in the Impacted Areas (*see* Exhibit "1"); require all new and existing Residential Care Facilities in the Impacted Areas to be subject to the 1,000 Foot Dispersal Requirement; and, disperse the number of Residential Care Facilities and beds so that 94 percent of the Residential Care Facilities in the City are not located in the 1.5 mile stretch of the Impacted Area that contains only 27 percent of the City's population.

164. For a judgment declaring the following:

a. That the City has the right to eliminate the over-concentration of Residential Care Facilities in the Impacted Areas by imposing a 1,000 Foot Dispersal Requirement between Residential Care Facilities in the Impacted Areas.

b. That the joint operations of small Residential Care Facilities is an integral use subjecting the Residential Care Facility to Federal, State, and local regulations as a large facility.

768178.2

c.  The City has a ministerial duty and is required to enforce the City's Municipal Code, Building and Safety Code, Fire Code, the Temporary Moratorium, and public nuisances.  The City also has a ministerial duty to not interfere with the Police Department's discharge of its public safety duties.

d.  Citizens has a right to require the City to perform its ministerial duties.

e.  The City has a duty to enforce Ordinance No. 2008-5 upon its effective date.

f.  The City has a duty, until Ordinance No. 2008-5 is effective, to enforce the existing law regulating Residential Care Facilities.

g.  The City has a duty to immediately abate all illegal Residential Care Facilities.

h.  The City has a duty to immediately abate all Residential Care Facilities in the City that do not have valid Federal Exception Permits.

i.  The City has a duty to require that Facility Operators obtain certificates of occupancy to ensure that Residential Care Facilities operate with the proper fire clearances.

j.  The City has a duty to enforce the Temporary Moratorium and immediately abate all violations by the Defendant Facility Operators, and any other violators;

k.  The City has a duty to abate all Residential Care Facilities in the City that were created illegally, operating illegally, or are otherwise unpermitted;

l.  The City has a duty to abate all health and safety violations and public nuisances created by the over-concentration of Residential Care Facilities, including but not limited to, smoking, especially in prohibited areas, trash and littering, loitering, theft, vandalism, trespassing, noise and obscene language, disposal of hazardous waste, including needles, drug dealing, and, drug-related incidents.

m.  The City has a duty to stop interference with the Police Department's and Fire Department's discharge of their public safety duties, and make all reports of incidents of public disturbances available to Citizens and other members of the public upon request.

n.  The City has a duty to establish a clear protocol to handle Citizens' complaints

-44-

768178.2

1    that relate to Residential Care Facilities and the adverse impacts.

2    o.  The City has a duty to revise the existing Municipal Code provisions governing

3        Residential Care Facilities and Ordinance No. 2008-5 so that the Zoning

4        Ordinance is consistent with the following General Plan Land Use Goals: LU1.1,

5        LU1.2, LU1.3, LU1.4, and LU1.5; and Land Use Policies: LU2.1, LU2.3, LU2.4,

6        LU2.5, LU2.6, LU3.1, LU3.2, LU3.3, LU3.5, LU3.6, LU4.1, LU4.2, LU5.1.1,

7        LU5.1.2, LU5.1.3, LU5.1.4, LU5.1.7, and LU5.1.8, as required by Government

8        Code section 65860.

9    p.  The City has a duty to revise the existing Municipal Code provisions governing

10        Residential Care Facilities and Ordinance No. 2008-5 so that the Zoning

11        Ordinance is consistent with section 20.10.010 of the City's Municipal Code,

12        which sets forth the specific purposes of residential zoning districts.

13    q.  The City has a duty to regulate Residential Care Facilities to reduce over-

14        concentration and the resulting negative impacts.

15    r.  The City Council abused its discretion and acted arbitrarily, capriciously and

16        without due regard for Citizens' rights when it refused to adopt the Planning

17        Commission's recommendations regarding: (1) Applying an Overlay Zone in the

18        Impacted Areas (*see* Exhibit "1"); and, (2) Requiring all new and existing

19        Residential Care Facilities in the Impacted Areas to be subject to the 1,000 Foot

20        Dispersal Requirement.

21    s.  The City Council improperly rejected the Planning Commission's

22        recommendation in this regard so that Councilmember (and former Mayor)

23        Rosansky could vote on Ordinance No. 2008-5 regulating Residential Care

24        Facilities.

25    t.  The City Council's improper rejection of the most effective means of addressing

26        over-concentration of Residential Care Facilities in the Impacted Areas causes

27        Citizens harm and prejudice.

28    u.  The City is required to issue a finding that over-concentration of Residential Care

-45-

CONCERNED CITIZENS OF NEWPORT BEACH'S FIRST AMENDED WRIT PETITION AND COMPLAINT

1    Facilities exists in the City and Impacted Areas.

2    165.    For a judgment declaring that the City and City Council's actions:

3    a.    Constitute a violation of the Municipal Code;

4    b.    Deprived Citizens of its Civil Rights under 42 U.S.C. section 1983;

5    c.    Constitute a violation of Citizens' substantive and procedural due process rights

6    under the law; and,

7    d.    Improperly deny Citizens' important public services that compromises Citizens'

8    right to public health and safety.

9    166.    For damages resulting from the City's and City Council's violations of Citizens'

10    constitutional civil rights, in an amount estimated to exceed $250 million, to be proven at trial.

11    167.    For damages resulting from the City's and City's Council's negligence for

12    failing to discharge mandatory duties prescribed by the City's Municipal Code.

13    168.    For damages for Defendant Facility Operators' unfair business practices and

14    violations of California Business and Professions Code section 17200, and conduct alleged

15    herein to constitute a public nuisance, in an amount estimated to exceed $250 million, to be

16    proven at trial.

17    169.    For a preliminary and permanent injunction enjoining the Defendant Facility

18    Operators' unfair business practices and conduct alleged herein to constitute a public nuisance.

19    170.    For attorneys' fees and costs pursuant to Code of Civil Procedure sections

20    1021.5 and 1036, Government Code section 800, and 42 U.S.C. section 1988, according to

21    proof.

22    171.    For costs of suit incurred herein.

23    172.    For such other and further relief as the Court may deem just and proper.

24    / / /

25    / / /

26    / / /

27

28

768178.2

1    DATED:    February 8, 2008          Respectfully submitted,

2                                        JACKSON, DeMARCO, TIDUS, PETERSEN &
                                         PECKENPAUGH
3                                             MICHAEL L. TIDUS
                                             ALENE M. TABER
4                                             KATHRYN M. CASEY

5

6                                        By: _____

7                                             Alene M. Taber
                                         Attorneys for Petitioner and Plaintiff CONCERNED
8                                        CITIZENS OF NEWPORT BEACH

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-47-                                                                           768178.2

SENT BY: HP LASERJET 3150;                9497526985;          FEB-8-08   4:27PM;          PAGE 2/2

## VERIFICATION

I have read the foregoing **FIRST AMENDED VERIFIED PETITION FOR WRIT OF MANDATE AND COMPLAINT** and know its contents.

☐   I am a party to this action. The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I am ☒ a Member ☐ an Officer ☐ a partner ☐ an agent of CONCERNED CITIZENS OF NEWPORT BEACH, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.

☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true. ☒ The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐   I am one of the attorneys for _____, a party to this action. Such party *is* absent from the county of aforesaid where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason. I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on February _8___, 2008.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

CONCERNED CITIZENS OF NEWPORT BEACH, a nonprofit mutual benefit corporation.

By_____
Denys H. Oberman, Member

767027.1

02/08/2008  FRI 13:43  [TX/RX NO 9161] ☑002



Exhibit 1

# OVERSIZED

# EXHIBIT

*(NOT IMAGED)*

# EXHIBIT

I hereby certify the foregoing instrument consisting of _____ page(s)
is a true and correct copy of the original on file in this court

ATTEST (DATE): _____

ALAN SLATER, EXECUTIVE OFFICER AND CLERK OF THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY _____

DEPUTY _____

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF ORANGE

I am over the age of 18 and not a party to the within action; I am employed by WOODRUFF, SPRADLIN & SMART in the County of Orange at 555 Anton Boulevard, Suite 1200, Costa Mesa, California 92626-7670.

On February _20_ , 2008, I served the foregoing document(s) described as **NOTICE OF REMOVAL OF ACTION; UNDER 28 U.S.C. §1441(b) (FEDERAL QUESTION)**

☒    by placing the true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list;

☐    by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

Addressee(s)

☒    **(BY MAIL)** I placed said envelope(s) for collection and mailing, following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for deposit in the United States Postal Service. I am readily familiar with the practice of WOODRUFF, SPRADLIN & SMART for collection and processing correspondence for mailing with the United States Postal Service, and said envelope(s) will be deposited with the United States Postal Service on said date in the ordinary course of business.

☐    **(BY OVERNIGHT DELIVERY)** I placed said documents in envelope(s) for collection following ordinary business practices, at the business offices of WOODRUFF, SPRADLIN & SMART, and addressed as shown on the attached service list, for collection and delivery to a courier authorized by _____ to receive said documents, with delivery fees provided for. I am readily familiar with the practices of WOODRUFF, SPRADLIN & SMART for collection and processing of documents for overnight delivery, and said envelope(s) will be deposited for receipt by _____ on said date in the ordinary course of business.

☐    **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☐    (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒    (Federal)    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on February _20_, 2008 at Costa Mesa, California.

_BOBBIE MARSH_
BOBBIE MARSH

WOODRUFF, SPRADLIN & SMART
ATTORNEYS AT LAW
COSTA MESA

564985.1

3

1

## **SERVICE LIST**

2

3

4

5

6

7

Michael L. Tidus
Alene M. Taber
Kathryn M. Casey
Jackson, DeMarco, Tidus, Petersen &
Peckenpaugh
2030 Main St., Suite 1200
Irvine, CA  92614
Telephone:  949/752-8585
Facsimile: 949/752-0597

Attorneys for Petitioner and Plaintiff
Concerned Citizens of Newport Beach

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOODRUFF, SPRADLIN
& SMART
ATTORNEYS AT LAW
COSTA MESA

564985.1